[No. S050526. Aug. 8, 1996.]

SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SYLVIA A., a Minor, et al., Real Parties in Interest.

## COUNSEL

Lloyd M. Harmon, Jr., and John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Judith Abeles and Judith E. Klein for Real Parties in Interest.

Carmela F. Simoncini as Amicus Curiae on behalf of Real Parties in Interest.

## OPINION

**MOSK, J.**—We granted review in this cause in order to resolve a conflict between the Courts of Appeal arising under the juvenile court law, which is codified as chapter 2 of part 1 of division 2 of the Welfare and Institutions Code, commencing with section 200, and the Juvenile Court Rules, which are set out as division Ia of title 5 of the California Rules of Court, commencing with rule 1400.[1] The conflict, as will appear, focuses on the meaning and effect of rule 1466(b), which deals with the juvenile court's selection and implementation of a new permanent plan of adoption or legal guardianship after it had previously ordered a permanent plan of long-term foster care.

I

Under the juvenile court law and the Juvenile Court Rules, as pertinent here, a county welfare department, among others, may submit a petition requesting the juvenile court to adjudge a minor to be within its jurisdiction and to declare him a dependent child. (§§ 270 et seq., 325 et seq.; rule 1406 et seq.) At a jurisdictional hearing, the juvenile court must determine whether the minor is in fact within its jurisdiction and, if he is, declare him a dependent child. (§ 300 et seq.; rule 1449 et seq.) At a dispositional hearing, it must decide how it may place him appropriately. (§ 360 et seq.; rule 1455 et seq.) It may remove him from his parents' home. (§ 361; rule 1456(d).) It then must generally order family reunification services. (§ 361.5; rule 1456(f).) It must review the minor's status at least once every six months at a hearing. (§ 364 et seq.; rule 1460 et seq.) If, after generally no more than 18 months, it determines that he cannot be returned home, it must terminate family reunification services and proceed to conduct a hearing to select and implement an appropriate permanent plan from among

---

[1]The juvenile court law was enacted by the Legislature in 1976 by section 1.5 et seq. of chapter 1068 of the Statutes of 1976, and has subsequently been amended. The Juvenile Court Rules were adopted by the Judicial Council pursuant to its general authority under section 6 of article VI of the California Constitution to "adopt rules for court administration, practice and procedure, not inconsistent with statute," and also pursuant to its specific authority under the juvenile court law itself, at section 265 of the Welfare and Institutions Code, to "establish rules governing practice and procedure in the juvenile court not inconsistent with law." As originally adopted, effective July 1, 1977, and subsequently amended, they were set out as division Ia of title 4 of the California Rules of Court, commencing with rule 1301. They were later repealed effective July 1, 1989. In their present form, they were adopted effective that same date, and have subsequently been amended.

Hereafter, all section references are to the Welfare and Institutions Code, and all rule references are to the California Rules of Court.

those specified—including, in order of mandatory preference, adoption (after termination of parental rights), legal guardianship, and long-term foster care. (§§ 366.21, 366.22, 366.26; rule 1463.) If it orders long-term foster care, there must be a status review every six months at a hearing to determine whether it continues to be appropriate. (§ 366.3, subds. (d), (e); rule 1466(b).) Generally, the county welfare department, among others, may conduct the six-month status review. (§ 366.3, subd. (d); rule 1466(b).) At least once every 18 months, however, the juvenile court must itself do so. (§ 366.3, subd. (d); rule 1466(b).) Also at least once every 18 months, during a 6-month status review, it must generally schedule a hearing on a new permanent plan, subject to the indicated mandatory preference for adoption over legal guardianship over long-term foster care. (§ 366.3, subd. (f).) More frequently, it may schedule such a hearing, subject to the same mandatory preference. (See § 366.3, subd. (f); rule 1466(b).) In this regard, rule 1466(b)—with which we are here concerned—provides: "If circumstances have changed since the permanent plan" of long-term foster care "was ordered, the [juvenile] court may order a new permanent plan . . . at any subsequent hearing, or any party may seek a new permanent plan by" a petition for modification under section 388 on grounds including change of circumstances.

In *In re Nina P.* (1994) 26 Cal.App.4th 615 [31 Cal.Rptr.2d 687] (hereafter sometimes *Nina. P.*), the Court of Appeal, First Appellate District, Division Two, considered the meaning and effect of rule 1466(b) (then numbered rule 1465(b)). A majority comprising Presiding Justice Kline and Justice Smith concluded in substance that, if the juvenile court determines that circumstances have changed since it ordered long-term foster care as the permanent plan, it may not order adoption or legal guardianship as a new permanent plan at a subsequent hearing unless it acts "sua sponte." (*In re Nina P., supra,* 26 Cal.App.4th at p. 621.) They also concluded in substance that, if a party believes that circumstances have changed, he may not request the juvenile court to make a determination to the effect unless he does so through a petition for modification. (*Id.* at p. 622.) Without such a petition, they evidently feared, the "due process rights of those whose interests will likely be affected . . . may not be fully protected . . . ." (*Ibid.*) Concurring in the result only, Justice Benson rejected the majority's two limitations, the former impliedly and the latter expressly, believing that they would "emasculate" the "policy favoring *modification* of long-term foster care placements" and would "directly undermine[] the express legislative goal of *permanent* placements." (*Id.* at p. 627 (conc. opn. of Benson, J.), original italics.)

In the cause under review, the Court of Appeal, Fourth Appellate District, Division One, unanimously chose to follow the concurring justice in *Nina P.* instead of the majority.

As we shall explain, we conclude that it was right to do so.

II

In the Court of Appeal, Fourth Appellate District, Division One, the San Diego County Department of Social Services (hereafter the department) submitted a petition for writ of mandate and/or prohibition against the San Diego County Superior Court, sitting as the juvenile court.

In support, the department made allegations to the following effect: Apparently in June 1992, it submitted separate petitions requesting the juvenile court to adjudge Sylvia A. and Victoria M., who were the daughters of Victor M. and Sandra M., and were then six and five years of age, respectively, to be within its jurisdiction and to declare them dependent children; in July 1992, at a joint jurisdictional and dispositional hearing, the juvenile court determined that Sylvia and Victoria were in fact within its jurisdiction because of sexual abuse and declared them dependent children accordingly, removed them from their parents' home, placed them in foster care, and ordered family reunification services; thereafter, it appears, Victor and Sandra had minimal contact with Sylvia and Victoria, and made minimal attempts to establish such contact; in January 1995, following substantial delay, the juvenile court terminated family reunification services and proceeded to conduct a joint hearing at which it ordered long-term foster care as the permanent plan for Sylvia and Victoria, having found no prospective adoptive parent or legal guardian; thereafter, it appears, Sandra had minimal contact with Sylvia and Victoria, and made minimal attempts to establish such contact, and Victor had no contact and made no attempts; around June 1995, having placed Sylvia and Victoria in four foster homes since 1992, and having been informed by the girls that they desired stability, the department found a prospective adoptive parent for both; in July 1995, during a hearing on a joint six-month status review at which Sandra was present and represented by appointed counsel and Victor was absent but represented by appointed counsel of his own, the department made a request of the juvenile court for the scheduling of a hearing on adoption as the new permanent plan, believing that circumstances had changed; in its order—which is the object of the department's challenge—the juvenile court, inter alia, refused to schedule such a hearing unless and until the department should submit a petition for modification on the ground of change of

circumstances: conceding that "we're just putting things back timewise" and perhaps exalting "form over substance," it concluded that "I'm bound by *Nina P.*"

After the Court of Appeal issued an order to show cause to the juvenile court, Sandra submitted opposition.

 In an opinion certified for publication, the Court of Appeal caused issuance of a writ of mandate directing the juvenile court to vacate its order to the extent that it refused to schedule a hearing on adoption as the new permanent plan for Sylvia and Victoria unless and until the department should submit a petition for modification on the ground of change of circumstances. It followed the concurring justice in *Nina P.* instead of the majority. In addition, it rejected the belief of the majority therein that, without a petition, "due process rights" might be threatened. Lastly, it concluded that such rights as belonged to Sandra had been fully protected.

On Sandra's petition, we granted review. We now affirm.

III

As quoted above, rule 1466(b) provides that, "[i]f circumstances have changed since the permanent plan" of long-term foster care "was ordered, the [juvenile] court may order a new permanent plan . . . at any subsequent hearing, or any party may seek a new permanent plan by" a petition for modification on grounds including change of circumstances.

It is unproblematical to read rule 1466(b) to provide that, if the juvenile court determines that circumstances have changed since it ordered long-term foster care as the permanent plan, it may order adoption or legal guardianship as a new permanent plan at a subsequent hearing, as appropriate. So read, the rule governs procedure in the juvenile court and is not inconsistent with the juvenile court law.[2] To be sure, this reading presupposes that the juvenile court *can make* the determination in question. It can. Through the mandatory six-month status reviews, it has available for its consideration information relating to the continuing appropriateness of long-term foster

---

[2]See footnote 1, *ante.*

care. This reading also presupposes that the juvenile court *should make* the order at issue, even in the absence of a petition by a party for modification on the ground of change of circumstances. It should. At least once every 18 months, during a 6-month status review, it must generally schedule a hearing on a new permanent plan, subject to the indicated mandatory preference for adoption over legal guardianship over long-term foster care. More frequently, it may schedule such a hearing, subject to the same mandatory preference. Thus, it proceeds under a presumption that long-term foster care is *inappropriate*.[3] It is obligated to act accordingly.

It is also unproblematical to read rule 1466(b) to provide that, if a party believes that circumstances have changed since the juvenile court ordered long-term foster care as the permanent plan, he may submit a petition to the juvenile court for modification to adoption or legal guardianship as a new permanent plan on the ground of change of circumstances. So read, the rule governs juvenile court procedure. It is also not inconsistent with juvenile court law provisions.

We do not find in rule 1466(b), or elsewhere, any proscription barring the juvenile court from making a determination of change of circumstances unless, in the view of the *Nina P.* majority, it acts "sua sponte." (*In re Nina P., supra,* 26 Cal.App.4th at p. 621.) Certainly, the rule is cast in the permissive language of "may" and not the prohibitory language of "may not." Without doubt, the juvenile court must itself make a determination of this sort. But it is simply not limited by a "sua sponte" condition. If form is not to be exalted over substance, it is the *fact* of the determination that must matter, not its *genesis*. In any event, were the rule to impose a "sua sponte" condition, to that extent it would be inconsistent with the juvenile court law and as such unauthorized and therefore invalid. For the law obligates the juvenile court to proceed under the presumption that long-term foster care is inappropriate. A "sua sponte" condition would restrict the juvenile court from acting accordingly in a situation in which, to judge from the party's request, long-term foster care is inappropriate not only by presumption but also in fact.

Neither do we find in rule 1466(b), or elsewhere, any proscription barring a party from making a request of the juvenile court for a determination of

---

[3]See generally section 396: "It is the policy of the Legislature that foster care should be a temporary method of care for the children of this state, that children have a right to a normal home life, that reunification with the natural parent or parents or another alternate permanent living situation such as adoption or guardianship are [*sic*] more suitable to a child's well-being than is foster care, and that this state has a responsibility to attempt to ensure that children are given the chance to have a happy and healthy life . . . ."

change of circumstances unless, in the view of the *Nina P.* majority, he does so through a petition for modification on that ground. (*In re Nina P., supra,* 26 Cal.App.4th at p. 622.) Again, the rule is cast in permissive and not prohibitory language. If it contained a no-request injunction, it would be invalid pro tanto as inconsistent with the juvenile court law and therefore unauthorized. For the law welcomes participation by the parties. (See § 366.3, subd. (e).)

The *Nina P.* majority evidently feared that, under the reading of rule 1466(b) set out above, the "due process rights of those whose interests will likely be affected . . . may not be fully protected . . . ." (*In re Nina P., supra,* 26 Cal.App.4th at p. 622.) The Court of Appeal below did not. Neither do we.

A determination by the juvenile court of change of circumstances *made "sua sponte"*—as to which the *Nina P.* majority did not express concern—does not threaten "due process rights" that would otherwise be protected by a party's submission of a petition for modification on that ground. A petition depends on a change of circumstances at the threshold and entails a subsequent noticed hearing on the merits. (§ 388; rule 1432.) A determination is no different in this regard. It too depends on a change of circumstances at the threshold. (Rule 1466(b); see § 366.3, subd. (f).) It too entails a subsequent noticed hearing on the merits. (Rule 1466(b); see § 366.3, subds. (e), (f), (g).) The notice contains, inter alia, the name and address of the party or other interested person notified, including the parents; the name of the child; the date, time, and place of the hearing; the nature of the hearing; and any recommended change in custody or status. (Rules 1407, 1460, 1466(b).) At the hearing, the child and the parents have a right to be present; to be represented by counsel and, if indigent, to have counsel appointed; and to present evidence. (See rules 1407, 1460, 1466(b).)

Similarly, a determination by the juvenile court of change of circumstances *made at a party's request*—as to which the *Nina P.* majority *did* express concern—does not threaten "due process rights" that would otherwise be protected by the party's submission of a petition for modification on that ground. Like such a petition, a determination of this sort also depends on a change of circumstances at the threshold and entails a subsequent noticed hearing on the merits. What is stated in the preceding paragraph applies here as well. True, a party may choose to make a request instead of submitting a petition in order to avoid a shouldering of the burden inherent

therein of pleading and proving change of circumstances. But he causes no prejudice thereby. If he fails in his request, he must then shoulder the burden. If he succeeds, he need not. He should not be required to plead and prove change of circumstances after the juvenile court has itself made a determination to that effect.

We acknowledge that, under our reading of rule 1466(b), the juvenile court may be able to order adoption or legal guardianship as the new permanent plan in place of long-term foster care more readily than it could otherwise. That does not disturb. As noted, the juvenile court is subject to a mandatory preference that favors both adoption and legal guardianship over long-term foster care.

We also acknowledge that, under our reading, the juvenile court may be able to act more expeditiously. That also does not disturb. Proceedings of this sort "must be concluded as rapidly as is consistent with fairness . . . ." (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 32 [68 L.Ed.2d 640, 653, 101 S.Ct. 2153].) A "period of time" that "may not seem . . . long . . . to an adult . . . can be a lifetime to a young child." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "Childhood does not wait for the parent to become adequate." (*Ibid.*)

Following the *Nina P.* majority, Sandra argues that a determination by the juvenile court of change of circumstances made at a party's request threatens "due process rights" that would otherwise be protected by the party's submission of a petition for modification on that ground. But, as explained, like such a petition, a determination of this sort depends on a change of circumstances at the threshold and entails a subsequent noticed hearing on the merits.

Going beyond the *Nina P.* majority, Sandra argues that, in another way as well, a determination by the juvenile court of change of circumstances made at a party's request threatens "due process rights" that would otherwise be protected by the party's submission of a petition for modification on that ground. She maintains, in effect, that such a determination affects the burden of pleading and proof. She is wrong to state that it imposes any requirement on the party who would oppose modification. But she is right to imply that it does indeed remove a requirement from the party who would seek modification: as explained, it allows the latter to avoid pleading and proving

change of circumstances. It is not objectionable in that regard. We shall assume for argument's sake that the burden of pleading and proving change of circumstances is not unduly burdensome. We nevertheless find no reason to conclude that it must be shouldered after the juvenile court has made a determination to that effect.

Finally, Sandra argues that, in yet another way, a determination by the juvenile court of change of circumstances made at a party's request threatens "due process rights" that would otherwise be protected by the party's submission of a petition for modification on that ground. She maintains, in effect, that such a determination upsets a fair balance between the government and the individual because, for example, it may be made at the request of a county welfare department but not at the request of a parent. Her premise is unfounded. A determination of this sort may be made at the request of *any* party.[4] It is not available to the government and unavailable to the individual.

To the extent that it is inconsistent with the views expressed above, *Nina P.* is disapproved.[5]

## IV

It follows that the Court of Appeal did not err by causing issuance of a writ of mandate directing the juvenile court to vacate its order refusing to schedule a hearing on adoption as the new permanent plan for Sylvia and Victoria unless and until the department should submit a petition for modification on the ground of change of circumstances. Under rule 1466(b), if the

---

[4]We note that, in the course of his opinion, the concurring justice in *Nina P.* stated, in substance, that a county welfare department is not a "party" for present purposes. (*In re Nina P., supra,* 26 Cal.App.4th at p. 626 (conc. opn. of Benson, J.).) We believe that he would have been more correct to say that such an entity is indeed a party *and sometimes more than a party.* It is a party because it litigates. And it is more than a party when it adjudicates, as in conducting the six-month status review to determine whether long-term foster care continues to be appropriate as the permanent plan.

[5]*Nina P.* was decided before the juvenile court law was amended into its present form to provide, among other things, that, at least once every 18 months, during a 6-month status review, the juvenile court must generally schedule a hearing on a new permanent plan, subject to the indicated mandatory preference for adoption over legal guardianship over long-term foster care, and that, more frequently, it may schedule such a hearing, subject to the same mandatory preference. (§ 366.3, subd. (f), added by Stats. 1995, ch. 540, § 9, No. 6 Deering's Adv. Legis. Service, p. 3501.) Even under the law as it then stood, the *Nina P.* majority were wrong. Now, all the more so.

juvenile court determined that circumstances had changed, it could have ordered adoption as the new permanent plan at a subsequent hearing, if appropriate. A fortiori, if it made such a determination, it could have scheduled a hearing on the question.[6] Whether it should do so, of course, is an issue to be resolved when it takes up the matter anew.[7]

## V

For the reasons stated above, we conclude that we must affirm the judgment of the Court of Appeal.

It is so ordered.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

---

[6]The juvenile court made its order before the juvenile court law was amended into its present form to provide that, at least once every 18 months, during a 6-month status review, it must generally schedule a hearing on a new permanent plan, subject to the indicated mandatory preference for adoption over legal guardianship over long-term foster care. (See fn. 5, *ante.*) Under the law as it now stands, it erred insofar as it effectively exempted itself from the foregoing scheduling requirement.

[7]The question may have become moot. The juvenile court is under a general obligation to schedule a hearing on a new permanent plan for Sylvia and Victoria, subject to the indicated mandatory preference for adoption over legal guardianship over long-term foster care, at least once every 18 months during a 6-month status review (see fn. 6, *ante*)—which means apparently no later than July 1996.