[No. A108890. First Dist., Div. Two. June 7, 2005.]

IN RE CARLOS E., a Person Coming Under the Juvenile Court Law.
BARBARA A., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
ALAMEDA COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Real Party in Interest.

Counsel

Aida Aslanian, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Richard Winnie, County Counsel, and Grace Fongmei Tam, Deputy County Counsel, for Real Party in Interest.

Opinion

**HAERLE, Acting P. J.—**

## I. INTRODUCTION

Carlos E.'s legal guardian, Barbara A., has petitioned for extraordinary relief pursuant to California Rules of Court, rule 38.1. She seeks review of the juvenile court's order terminating reunification services and setting a permanency planning hearing under Welfare and Institutions Code section 366.26.[1] Barbara contends the juvenile court abused its discretion when it found that, although the Alameda County Social Services Agency (Agency) failed to provide her with reasonable reunification services, no further services would be provided. She also argues that the juvenile court erred in finding the return of Carlos E. to her would create a substantial risk of detriment to his safety, protection, or physical or emotional well-being. We conclude that the termination of Barbara's status as Carlos's legal guardian is not governed by section 366.26 and she is not entitled to reunification services. We, therefore, deny the writ.

## II. FACTUAL AND PROCEDURAL BACKGROUND

We are familiar with this matter because in case No. A104177 we considered the Agency's appeal challenging the juvenile court's finding,

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

made at the six-month review hearing stage, that the Agency failed to provide Barbara A. with reasonable services.[2]

Carlos is now seven years old. He was born with multiple birth defects resulting in abnormal intestines and the absence of an anus. As a result of this condition, when he was an infant he required a colostomy bag, a feeding tube connected to his stomach, and an IV line to his head. His early daily care was extraordinarily complex and taxing. Because his parents were unable to provide him with the care he required, Carlos was detained when he was four months old.

The Agency filed a petition under section 300 and Carlos was declared a dependent of the court. His parents were provided with reunification services and Carlos was placed in foster care. Barbara A. and her partner, Ruth B., were Carlos's foster parents.

At the six-month review hearing, Carlos's mother was still unable to perform all the procedures necessary to care for him and the court granted another six months of services. Ultimately, reunification services to Carlos's parents were terminated. At an uncontested section 366.26 hearing, the court appointed Barbara A. and her partner as Carlos's legal guardians. The court did not terminate Carlos's parents' parental rights. The court dismissed the dependency, and retained jurisdiction of the guardianship under section 366.4. Letters of guardianship were issued on September 24, 1999.

By all accounts, Carlos required full-time physical care in his early years. Barbara is a retired pediatric nurse and cared for Carlos with some assistance from others. In 2001 and 2002, Barbara experienced a series of physical and psychological difficulties, including the loss of leg function (which resulted in paraplegia), as well as diabetes, high blood pressure, a brain surgery that led to her becoming legally blind, depression, anxiety and suicidality. She also obtained a restraining order against her partner after she was verbally and physically abused by her. In 2001, the Agency filed and then dismissed a dependency petition. The Agency thereafter offered Barbara "informal supervision."

In July 2002, Barbara admitted herself to the hospital. She reported that she had been without any nursing assistance for several weeks and had been caring for Carlos around the clock. As a result, both she and Carlos were suffering emotionally. Carlos was detained and the Agency filed a section 300

---

[2] In that opinion, we concluded the juvenile court's no reasonable services finding was not appealable and grounds did not exist that would permit us to treat the Agency's appeal as a petition for a writ of mandamus. Therefore, we dismissed the Agency's appeal. (*In re Carlos E.* (Oct. 12, 2004, A104177) [nonpub. opn.].)

petition. Carlos was placed in the home of Marie C. Apparently because of the rigor of caring for him, Carlos also lived in the home of another foster parent, H.G., several days a week.

Barbara stipulated to jurisdiction in October 2002. The court found that there was clear and convincing evidence that placement with Barbara would be detrimental to Carlos's "safety, protection and well-being." The court ordered visitation and reunification services be provided to Barbara.

A six-month review hearing was held beginning on January 30, 2003. After many continuances and extensive testimony, this hearing concluded on September 5, 2003. On that day, the juvenile court found that reasonable services had not been provided to Barbara. Specifically, the court found that the Agency had departed from the court's visitation order without seeking any modification of that order. The court ordered six more months of reunification services.

At the 12-month review period, the Agency reported that Barbara had not made substantial progress in complying with her case plan and had not alleviated or mitigated the causes necessitating out-of-home placement. The Agency recommended that Barbara's guardianship be "set aside" and that she not be provided with any further reunification services. The Agency also recommended that Carlos be permanently placed with his current foster parents, Marie C. and her husband.

However, no 12-month review hearing was held. Instead, Barbara and the Agency stipulated that Barbara would be provided with further reunification services. The parties agreed that their goal would be to return Carlos to Barbara before the 18-month review hearing. Carlos's foster parents and Barbara were ordered to engage in mediation "with a focus of rebuilding their relationship . . . [and] to discuss issues of boundaries and co-parenting, if and when appropriate."

The Agency filed an 18-month review hearing report on December 24, 2003. In this report, the Agency recommended that Carlos remain in his placement and that Barbara receive six more months of reunification services. The Agency asked the court to make the findings typically made prior to a permanency planning hearing: including findings that Carlos's return to Barbara would create a risk of detriment to his safety and that Barbara had been provided with reasonable reunification services.

In an addendum report filed on January 12, 2004, the Agency recommended for the first time that a permanent planned living arrangement be approved in which Carlos's foster parents be appointed to serve as his legal

guardians. The Agency continued to recommend that Barbara receive six additional months of services, "pursuant to 366.3(e)." The Agency noted that "[t]he minor has a significant relationship with Barbara A. It is in the best interest of Carlos that Ms. A. develop a workable relationship with [the foster parents] the proposed future legal guardians. Continuation of services to Ms. A. will enable the Child Welfare Worker and Dependency Mediators among others to continue to address issues of visitation and Ms. A.'s future involvement with Carlos once her guardianship is set aside."

The contested 18-month hearing began on February 26, 2004, and took place over the next seven months. During that time, the juvenile court heard extensive testimony, including medical testimony about Barbara's mental health. The matter was submitted on September 23, 2004. On December 14, 2004, the trial court found that Carlos could not be returned to Barbara because to do so would present a substantial risk of detriment to him.

In reaching this conclusion, the court noted that Carlos is "stable in his placement and his health" in the care of his current foster parents. "He is no longer chronically anxious and has displayed minimal to no anxiety during the past six months. He is mainstreamed in school and is doing well academically." The court also noted that the "minor is growing older and maturing. He was approximately four-and-a-half years old when removed from legal guardian['s] . . . care . . . . He is now seven years old." The court took note of the minor's "important attachments" to both his foster parents and to Ms. A.

The court described an evaluation of Barbara and Carlos conducted by a social worker at Children's Hospital. This social worker concluded that while "Ms. A. was making valiant efforts to recover from her profound and pervasive early-abuse history that underlies unconscious processes, her decision to voluntarily place Carlos should not be rescinded. [¶] 'The anxiety that Carlos exhibits around Barbara A. . . . in the playroom is indicative of risk that is still present in the relationship and that may become overwhelming once again if external circumstances deteriorate.' " The court also described other testimony that indicated that "legal guardian A.'s physical, psychological and emotional condition has likewise stabilized."

The court concluded as follows: "In answering the question of whether there is a substantial risk of serious harm to the minor if returned to Ms. A.'s care . . . [¶] . . . the only conclusion that I could reach based on the record and the state of the evidence is, yes, there is. I can only answer yes because it is unknown to the court just what Ms. A.'s ability is to care for the minor. [¶] While I have a hunch that she might be able to adequately care for the minor, I don't know, in fact, if she's able to do so. [¶] There are still issues regarding

her ability to refrain from discussing age-inappropriate matters with Carlos that make him anxious regarding her medical issues and his medical issues, as well as concerns about her ability to adequately provide for his care with the assistance of attendants, in addition to concerns about her ability to keep [an alternate personality] under check with Carlos. Thus, given these concerns raised by the evidence, I believe that the Agency has met its burden of proof by a preponderance of evidence."

The court also found that the Agency had failed to provide Barbara with reasonable reunification services. The court took the Agency to task for failing to do its "job to actively assist Ms. A. and follow through during the reunification process." In particular, the court pointed out that the Agency had not facilitated visitation and had not initiated meaningful contact with Barbara's therapists to determine her progress and her ability to care for Carlos. Although the court recognized that it had the discretion to continue services, it refused to do so because "almost 30 months has now elapsed since the minor was removed from Ms. A.'s care, . . . the minor is truly thriving in the home of the de facto parents, . . . his anxiety has stabilized and/or significantly decreased . . . while I could extend this matter further and I certainly understand that I have the discretion to do so, I do not believe prolonging the matter is in Carlos's best interest."

The court set the matter for a permanency planning hearing under section 366.26 with legal guardianship by Carlos's foster parents as the permanent goal.

This timely writ petition followed.

## III. DISCUSSION

### A. *Request for Supplemental Briefing*

In her writ petition, Barbara challenges the juvenile court's setting of this matter for a permanency planning hearing under section 366.26. She contends the juvenile court erred in doing so because substantial evidence does not support its finding that return of Carlos to her presents a risk of harm. She also argues the court abused its discretion when it found she had not been provided with adequate reunification services and nevertheless refused to extend further services to her.

At no point in the extensive history of this case have the parties considered the implications of Barbara's status as Carlos's legal guardian. Therefore, we asked the parties to brief the question of whether a legal guardian appointed

by the juvenile court is entitled to reunification services and to discuss the procedure for terminating such a legal guardianship. They have done so.

■ We now conclude that Barbara's writ must be denied because, as Carlos's legal guardian, she has no right to reunification services and, therefore, cannot challenge the adequacy of these services. Similarly, we conclude that the juvenile court is not required to find that the return of a child to a legal guardian presents a risk of harm to the child before it terminates the legal guardianship and, therefore, Barbara's challenge to this finding is without merit.

B. *Creation and Termination of Legal Guardianship by Juvenile Court*

Barbara was appointed Carlos's legal guardian by the juvenile court at an uncontested permanency planning hearing set pursuant to section 366.26 after reunification services to Carlos's parents were terminated. The court did not terminate Carlos's parents' parental rights. The court dismissed the dependency, and retained jurisdiction of the guardianship under section 366.4. Letters of guardianship were issued on September 24, 1999. The most fundamental question before us—and the question the Agency failed to answer correctly at the outset of this matter—is what route it should have taken once it understood, in 2002, that Barbara could not safely care for Carlos. To answer this question, we must consider how a legal guardianship is created and terminated under the dependency statutes.

■ The juvenile court's power to appoint a guardian for a child who has been detained is governed by sections 360 and 366.26. Under section 360, a legal guardianship may be ordered by the court if a dependent child's parent or parents waive reunification or family maintenance services and agree to the guardianship. A legal guardianship may also be created following a parent's failure to reunify with a child. When this occurs, section 366.26, subdivision (b)(3), provides that, as one of several options for permanency planning, the juvenile court may appoint a guardian for a dependent child and order that letters of guardianship issue. This is what happened in this case.

■ Section 366.3 provides that when a juvenile court orders a permanent plan of legal guardianship under either section 360 or 366.26, the court retains jurisdiction over the child. After the legal guardianship is established, the court either continues jurisdiction over the child as a dependent child of the juvenile court or terminates the dependency and retains jurisdiction over the child as a ward of the legal guardianship. Similarly, section 366.4, subdivision (a), provides that "[a]ny minor for whom a guardianship has been established resulting from the selection of implementation of a permanency plan pursuant to section 366.26 is within the jurisdiction of the juvenile court."

██ Sections 360 and 366.3 and California Rules of Court, rule 1466(c), describe the procedure for terminating a legal guardianship. Most basically, a proceeding to terminate a legal guardianship created under section 360 or section 366.26 must be held in the juvenile court, unless the termination is due to an adoption or to the child's emancipation. (§ 366.3, subd. (b).) An application to terminate a guardianship created by the juvenile court is governed by section 388. (§ 360.) Section 388 provides that a juvenile court may change an earlier issued order, such as an order creating a legal guardianship, "[i]f it appears that the best interests of the child may be promoted by the proposed change of order . . . ." (§ 388, subd. (c).) California Rules of Court, rule 1466(c), provides that the juvenile court has three options in ruling on a petition to terminate a guardianship: it may grant the petition, deny the petition or "[d]eny the petition and request the county welfare department to provide services to the guardian and the ward for the purpose of maintaining the guardianship, consistent with section 301."[3] (Cal. Rules of Court, rule 1466(c)(3)(B).) California Rules of Court, rule 1432(f), provides that the petitioner requesting the modification under section 388 "has the burden of proof."

██ Section 366.3 also provides that, before the juvenile court may hold a hearing on a petition to terminate a legal guardianship, it shall order the county department of social services to prepare a report for the court's consideration "that shall include an evaluation of whether the child could safely remain in the legal guardian's home, without terminating the legal guardianship, if services were provided to the child or legal guardian. If applicable, the report shall also identify recommended services to maintain the legal guardianship and set forth a plan for providing those services." (§ 366.3, subd. (b).)

Should the court terminate the legal guardianship, it may resume dependency jurisdiction over the child and order the county department of social services to develop a new permanent plan, to be presented to the court within 60 days of the termination. If parental rights to the child have not been terminated, the child's parents shall be given notice of the new permanency planning hearing. (§ 366.3, subd. (b).)

██ Nowhere in the statutory guidelines related to the creation and termination of a legal guardianship in the juvenile court is there any requirement that a county department of social services provide reunification services before a legal guardianship is terminated. Nor is there any requirement that the juvenile court make a finding that adequate reunification

---

[3] Section 301 provides for a "program of supervision" which "attempt[s] to ameliorate the situation which brings the child within . . . the jurisdiction of Section 300 by providing or arranging to contract for all appropriate child welfare services . . . ." (§ 301, subd. (a).)

services were offered. In fact, as one court has pointed out, "There is no requirement for reunification services anywhere in this statutory scheme." (*In re Alicia O.* (1995) 33 Cal.App.4th 176, 183 [39 Cal.Rptr.2d 119].) At most, the juvenile court may order informal supervision of the legal guardian in order to assist in "ameliorating" the conditions that led to the request to terminate the legal guardianship.[4]

Thus, had the Agency proceeded as the Legislature intended under the dependency statutes after it detained Carlos in 2002,[5] it should have filed a petition to terminate Barbara's legal guardianship. In order to determine Carlos's best interests, the court would then have been provided with the report required under section 366.3. The court could then have determined whether it was in Carlos's best interests to deny or grant the petition or order maintenance services to Barbara, as described in California Rules of Court, rule 1466(c)(3)(B) and in section 301. This, and no more, is what the Legislature intended to maintain or terminate a legal guardianship created by the juvenile court.

This is not how the Agency proceeded, however. Instead, it and the juvenile court took a three-year detour in which, at various extended stages en route (both the 6- and 18-month review hearings took almost a year each to complete), the Agency and Barbara litigated issues which are simply not relevant to the question of whether it is in Carlos's best interests for Barbara to continue as his legal guardian. The Agency's failure to recognize the nature and extent of Barbara's role as Carlos's legal guardian has resulted in a needless and costly battle over the adequacy of reunification services to which Barbara was never entitled. This error is all the more egregious because it raised the false expectation in Barbara that, if she successfully completed the reunification process, Carlos would be returned to her. This is simply not an appropriate way to treat a person who, by all accounts,

---

[4] Judicial Council form JV-350 (rev. Jan. 1, 2001), a mandatory form adopted by the Judicial Council of California, tracks this statutory scheme. It explains that a legal guardian may be removed as follows: "Any person with an interest in the child's welfare may ask the court to have the guardian changed. A child who is 14 years or older has the right to ask to have the guardian changed. The judge will look to see if the guardian's duties have been performed properly. The judge will consider what is in the best interest of the child." (*Id.* at p. 11.) Consistent with the statutory scheme we have described, there is no mention of any right to reunification services.

[5] We note that it is not at all clear that the court must assume jurisdiction in a situation such as this one through the section 300 petition process, which is what occurred here. Section 366.3 provides that the juvenile court retains jurisdiction over a child as a ward of the court after the court imposes a legal guardianship. It would appear, therefore, that should it become necessary to alter the court's order placing the child with a legal guardian, a section 387 petition would be the appropriate method for obtaining an order detaining the child and placing him or her in foster care.

sacrificed a great deal to care for this child at a time when it was difficult to find anyone, much less someone with the skill and passion Barbara possessed, to do so.[6]

Barbara, in supplemental briefing, contends that, in fact, she was entitled to reunification services under section 361.5.[7] She argues that the references to a child's "parents or guardians" in this section, and throughout the dependency statutes, means that a child's legal guardian, appointed by the juvenile court, has the same right to reunification services as a parent does. We disagree.

■ In *In re Carrie W.* (2003) 110 Cal.App.4th 746, 758 [2 Cal.Rptr.3d 38], the court observed that references to "parents or guardians" such as those found in section 361.5, refer to guardianships established in probate court, rather than guardianships created by the juvenile court after a child has become a dependent of the court: "[t]hroughout the Welfare and Institutions Code, reference is made to 'parents or legal guardians.' Although we have not found any specific section determining the significance of this particular phrasing, the 'guardians' portion of 'parents or guardians' appears to refer to situations where a child enters the jurisdiction of the dependency court with a guardianship previously established in probate court. This phrasing is meant to include the appropriate legal caretaker of a child within the code sections at the time dependency proceedings are initiated." (*In re Carrie W., supra,* at p. 758.)

■ We agree with this analysis. The Legislature has specifically provided for the creation and termination of legal guardianships *after* a child becomes a dependent of the juvenile court. The maintenance and termination of this relationship differs from the treatment accorded "parents and guardians" in section 361.5, and the existence of this different treatment supports the conclusion reached by the court in *Carrie W.* that references to "guardians" elsewhere in the dependency statutes refer to guardianships created through the Probate Code, rather than by the juvenile court. Further, we read the reference to a child's parents *or* guardians as a reference to a Probate Code guardianship because such guardianships are generally created when a child's parents die or are incapacitated. Such a child would therefore enter the dependency system with *only* a guardian and, therefore, the reference to a parent *or* guardian would include such a child. In contrast, a juvenile court guardianship is far more likely to be created while a child's parents are still

---

[6] Without explaining why it expended substantial resources providing reunification services and then defending itself against a charge that they were inadequate, the Agency, in supplemental briefing, simply concedes that Barbara is not entitled to reunification services.

[7] Section 361.5, subdivision (a) provides that "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians."

living. In contrast to a child who enters dependency under a Probate Code guardianship, a child cared for by a guardian appointed by the juvenile court generally has *both* a parent and a guardian.

We conclude, therefore, that because Barbara was not entitled to reunification services, she may not argue that the court erred in refusing to extend services to her past the 18-month review hearing stage. Similarly, in terminating Barbara's legal guardianship of Carlos the court's inquiry is not whether there is a substantial risk of harm to Carlos but, instead, whether the change in Barbara's status is in Carlos's best interest. For this reason, we must reject Barbara's argument that the court erred in finding that there was a substantial risk of harm to Carlos should he be returned to her care.

## C. *Proceedings on Remand*

For the reasons we have described, Barbara's writ must be denied. Ordinarily, we would remand this matter with directions that the court proceed in a manner consistent with this opinion. Given the lengthy history of this case, however, and the Agency's contention that past juvenile court findings suffice to terminate Barbara's guardianship, we will briefly consider the appropriate proceedings in light of the result we have reached.

The Agency is correct when it points out that there is no need for a juvenile court to hold a separate hearing in order to consider a request to terminate a guardianship. (*In re Alicia O., supra,* 33 Cal.App.4th at pp. 183–184; *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 889 [55 Cal.Rptr.2d 396, 919 P.2d 1329].) Such a request may, for example, be considered at a dispositional hearing. (*In re Alicia O., supra,* 33 Cal.App.4th at pp. 183–184.) However, the cases cited by the Agency to this effect do not stand for the proposition that the trial court's findings made in other contexts may be deemed to be findings supporting the termination of a legal guardianship, when no request for such a termination has ever been made. In *In re Alicia O., supra,* 33 Cal.App.4th at pages 183–184, for example, the social services agency filed a petition to terminate guardianship. The dependency statutes make clear that a legal guardianship created by the juvenile court is terminated through the filing of a petition to terminate the guardianship. The Agency must, therefore, file such a petition and the proceedings in this case must follow the course we have outlined in this opinion. We note, too, that, should the juvenile court terminate her legal guardianship, Barbara is entitled to petition the court for de facto parent status in order to participate in permanency planning for Carlos.

## IV. DISPOSITION

The petition for writ of mandate is denied. Our decision is final as to this court immediately. (Cal. Rules of Court, rule 24(b)(3).)

Lambden, J., and Ruvolo, J., concurred.

On June 9, 2005, the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied August 17, 2005. Werdegar, J., did not participate therein.