Filed 6/30/22  In re S.L. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.L., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JENNA L., <br><br> Defendant and Appellant. | F083898 <br><br> (Super. Ct. No. 20JP-00004B) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Brian L. McCabe, Judge.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Levy, Acting P. J., Peña, J. and Snauffer, J.

Appellant, Jenna L. (mother), mother of now 14-year-old S.L. appealed from the juvenile court's January 18, 2022, order establishing a permanent plan of legal guardianship. After reviewing the juvenile court record, mother's court-appointed counsel informed this court he could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 (*Phoenix H.*).)

Mother filed a letter asking for leave to file supplemental briefing because her attorney was negligent and refused to remove herself. She also alleges S.L. wanted to address the juvenile court but his attorney would not allow it.

We conclude mother failed to set forth a good cause showing that any arguable issue of reversible error arose from the termination hearing. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

## PROCEDURAL AND FACTUAL SUMMARY

In January 2020, law enforcement took then 11-year-old S.L. and his 14-year-old brother, L.L. (the boys), into protective custody and arrested mother for child endangerment after investigating allegations that she used excessive physical force in disciplining them. L.L. disclosed multiple incidents of being hit in his testicles with a belt buckle, punched in the stomach and in the face and pushed into the kitchen counter by mother. S.L. reported mother hit him with a belt, paddle, or her fist a couple of times a week, leaving bruises. Mother made him take long baths in Epsom salt to diminish the marks and bruises. The fathers of the boys were aware mother was physically abusing them but did not intervene to protect them. The boys were placed in the care and custody of the Merced County Human Services Agency (agency) and into a foster home.

The juvenile court detained the boys pursuant to an original dependency petition, alleging they came within its jurisdiction under section 300, subdivisions (a), (b), and (c). S.L.'s father died the day before the detention hearing.

2.

A contested jurisdiction and disposition hearing was conducted in June 2020. S.L. testified mother abused him his whole life by hitting him with objects. Asked how he would feel if the court returned him to mother's custody, he said, "I'm never going back to my mom's." "No one is gonna make me. And if I do, I guess, I'm taking off." L.L. also testified mother abused him nearly his whole life. "[N]othing in the world," he testified, "would make me go back to her." He explained, "I don't want to live with someone that would hurt me."

Mother testified and denied physically abusing the boys, although she admitted spanking them with her open hand and hitting them with a belt. She also denied having L.L. take salt baths to reduce swelling or bruising. She wanted to reunify with the boys and asked that they be returned to her.

The juvenile court sustained the allegations, declared the boys dependents of the court and removed them from mother's custody. The court ordered mother to participate in services to reunify with S.L. and set a six-month review hearing. The court cautioned mother about fighting with S.L. and asked S.L. to keep an open mind and try to work toward a meaningful relationship with her. The court included in its visitation order the option that S.L. "opt out" if he did not want to have contact with mother.[1] The court placed L.L. with his father in Oklahoma and ordered a home visit. The court ultimately awarded L.L.'s father full custody of him, granted mother visitation and dismissed dependency.

In September 2020, at the six-month review hearing, the juvenile court continued reunification services for mother with S.L. who had been placed in a short-term

---

[1]    Mother appealed in the first of several appeals taken from these dependency proceedings. In this first appeal, the portion of the trial court's visitation order allowing S.L. to "opt out" of visitation was reversed. (*In re L.L.* (Feb. 22, 2021, F081371) [nonpub. opn.].) On our own motion, we take judicial notice of our case file and opinion in this and all subsequently referenced prior opinions. (Evid. Code, §§ 452, subd. (d), 459, subds. (a)–(c).)

3.

residential therapeutic program. He maintained that he did not want to return to mother's custody, stating, " 'If I go back with my mom, I will kill myself.' " The juvenile court ordered visits to be "no less than one time monthly, as recommended and in the best interest and at the discretion of [S.L.]."[2]

In its report for the 12-month review hearing, filed in February 2021, the agency recommended the juvenile court continue mother's reunification services. The agency noted S.L. was living with a nonrelative extended family member. Mother was residing in Oklahoma and had supervised visits with him in California. She refused to accept responsibility for why the boys were removed from her care and claimed they recanted. S.L. wanted the court to know he did not want to go home with his mother but wanted to stay with his " 'grandma' " and " 'grandpa.' "[3]

Mother's attorney requested a contested 12-month review hearing because mother wanted S.L. returned to her custody in Oklahoma with family maintenance services. The contested hearing was conducted in March 2021. County counsel informed the court that the agency submitted an Interstate Compact on the Placement of Children (ICPC) to the state of Oklahoma to assess mother's home. The results were pending. Mother's attorney submitted the matter in light of the ICPC. Mother informed the court she completed almost 80 hours of parenting instruction and attended trauma counseling three to four times a week. The juvenile court continued mother's reunification services and found there was a substantial probability S.L. could be returned to her custody and set the 18-month review hearing for June 24, 2021.

---

[2]     On appeal, the parties stipulated to reversal of the visitation order. We accepted the stipulation and reversed the visitation order. (*In re L.L.* (May 26, 2021, F082005) [nonpub. opn.].)

[3]     S.L. was placed with Mr. and Mrs. F. who he regarded as his "grandpa" and "grandma." They raised S.L.'s father but did not adopt him. Because they were not relatives, they fell into the category of "nonrelative extended family member."

In a letter dated May 11, 2021, the Oklahoma Human Services denied the ICPC home study. Mother had seven referrals in Oklahoma, the majority of which alleged physical abuse. In June 2020, she completed a psychological assessment and was found to have poor insight, which placed her children at risk. In addition, the references obtained for the home study were guarded. Mother told the Oklahoma worker that she never abused the boys and "the only reason they are in custody is because her children told the judge they did not want to go home." She said the boys were in custody because L.L. lied, and S.L. went along with it.

On June 21, 2021, mother filed a modification petition (§ 388) asking the juvenile court to return S.L. to her custody with or without family maintenance services. She alleged she had completed her case plan requirements and could provide a safe and stable home for S.L. A hearing was set on July 1, 2021, for the court to determine whether to conduct an evidentiary hearing.

The 18-month review hearing, originally set for June 24, 2021, was continued to July 1, 2021. The agency filed its report for the hearing on June 29 and recommended the juvenile court terminate mother's reunification services and set a section 366.26 hearing. The agency was concerned about mother's interactions with S.L. during visits. He reported on one occasion he told mother he loved her, and she responded, " 'You do not love me[.] [K]ids that love their parents want to be with them.' " S.L. expressed multiple times he did not want to return to mother's custody and wanted to remain in his current placement. He said, " 'I have been in over 15 foster homes and I want to stay here.' "

On July 1, 2021, the juvenile court set a contested 18-month review hearing for August 17, 2021. The court denied mother a hearing on her section 388 petition.

Mother testified at the contested 18-month review hearing on August 17 and denied physically abusing L.L. and S.L. She did not believe the agency should have ever intervened in her case. The juvenile court admitted L.L. and S.L.'s testimony from the

jurisdiction/disposition hearing. Minor's counsel made an offer of proof that S.L. did not want to go home because he did not feel safe.

The juvenile court found it would be detrimental to return S.L. to mother's custody, terminated her reunification services and set a section 366.26 hearing for December 2, 2021. In ruling, the court stated mother and the boys could not both be correct on the question of whether mother physically abused them, and the court did not find mother to be credible. The court also noted that mother's continued denials of the physical abuse of the boys prevented her from making further progress.[4]

On September 13, 2021, mother filed a section 388 petition asking for unsupervised visitation, reimbursement for an attorney with writ experience, a restraining order preventing anyone from vaccinating S.L., and for the court to terminate jurisdiction. The court denied the petition, finding mother's proposed orders were not in S.L.'s best interest.

On October 4, 2021, S.L. filed a section 388 petition, requesting unsupervised visits because he had not seen mother for three months and wanted to see her. The juvenile court denied the request as it appeared S.L. filed the petition without benefit of counsel and failed to show that unsupervised visitation was in his best interest.

The agency recommended the juvenile court order a permanent plan of legal guardianship for S.L. He was placed with a nonrelative extended family member in Ventura County and wanted to be in a legal guardianship with his caregivers. He had monthly supervised visits with mother and enjoyed being with her but was worried that if he went to Oklahoma she might " 'try to do something to him.' "

On January 18, 2022, the juvenile court conducted the section 366.26 hearing. Mother had filed a section 388 petition on December 30, 2021, requesting unsupervised

---

**4** Mother filed an extraordinary writ petition, challenging the juvenile court's detriment finding. We denied the writ petition. (*Jenna L. v. The Superior Court of Merced County* (Nov. 16, 2021, F083201) [nonpub. opn.].)

visits and offering several witnesses to support her request. She alleged the social worker was biased and did not make adequate efforts to help her reunify. The court denied the section 388 petition, stating the witnesses were all available at the time of the 18-month review hearing in August 2021.

Mother told the juvenile court she wanted to say something so that it was on the record. The court denied her request because she had counsel and told her to communicate through counsel. The court stated it was not inclined to allow statements but put mother in a break-out room so she could talk to her attorney. Mother's attorney, Cindy Morse, told the court mother wanted it on the record that Morse and mother's retained counsel, Jeffrey Tenenbaum, who represented mother from April 2020 to May 2021, did not follow her instructions. The following exchange occurred:

> "THE COURT: So are you asking for—what? Other than it's been placed on the record.

> "MS. MORSE: I'm not asking that she put it on the record. I'm telling you that's what she wants. And if you don't want her to, then deny it or grant her the ability."

> "THE COURT: If that's the extent of what she wants, then that's been placed on the record that—

> "THE MOTHER: It's not, your Honor.

> "THE COURT: Ma'am, this is not the forum for such complaints. If you have another matter that you desire, the Court would entertain it, but otherwise we're ready to proceed on the [section 366.26] hearing.

> "[THE MOTHER]: Your Honor, I do. So if you read the [section 388 petition], it says that there was a biased social worker. I asked Mr. Tenenbaum and I asked Ms. Morse to give the evidence that I am trying to present to you to prove that the social worker was biased. And anybody who has read the record has said the same thing.

> "Additionally, [S.L.] has asked for a new attorney on numerous occasions. He—I was just recently tagged in an email to [minor's counsel] asking her to file [a section 388 petition], and asking her to tell you that he wants to speak to you and that he is not being heard, and nobody is

7.

listening to him.  [S.L.] has called the CASA.  [S.L.] has called the CASA supervisor.  He's not been able to get through to anybody.

"Debbie [Bennett (minor's counsel)]] is not responding to his email. I have the proof of the email because he tagged me in it.  And [Ms. Bennett] is not responding to him.  There's no reason why she should not have allowed you to know that information, that he emailed her and is asking her—

"THE COURT:  All right.  Thank you.

"The Court has noted that mother had a statement for the record.  It's now memorialized on the record.

"And then, Ms. Bennett, any comments before the Court proceeds with the [section 366.26 hearing]?

"MS. BENNETT:  The email that [mother] is talking about was never received by my office.  Ms. Morse did supply me with a letter supposedly written by [S.L.] that the mother somehow had.  We did reach out.  We have not had a response.  I've reached out to the caretaker.  I have not had a response."

"My concern is that previously in this case there was a supposed [section 388 petition] that was filed by [S.L.].  It was actually written by [mother], sent to Mr. F[].  Mr. F[.] gave it to [S.L.].  Then it was sent back to [mother].  Then it was sent to the Court.  So my concern is the continued manipulation by the mother of [S.L.].

"And I would be submitting the matter, your Honor."

During the section 366.26 phase of the hearing, mother submitted on the recommendation to order S.L. into a legal guardianship.  However, she wanted a contested hearing regarding the recommended order for supervised visitation on the exit order.  She proposed unsupervised visitation at the discretion of Mr. F., the proposed guardian.  She wanted Mr. F. and S.L. to testify.  It was explained to mother that S.L. was not available to testify so mother wanted the hearing continued until he was available. Bennett objected to S.L. testifying.  He stated earlier in the afternoon that he did not want to appear in court and had nothing to tell the judge.

8.

The juvenile court confirmed through county counsel that the agency would continue to be involved in the case. The question was whether visitation should be supervised or unsupervised.

Mother testified she agreed to the legal guardianship and wanted Mr. F. to testify about visitation. Mr. F. believed S.L. could safely have unsupervised visitation with mother. However, he was unaware that S.L. was concerned mother might harm him if he went to see her in Oklahoma. He testified that mother prepared the section 388 petition for S.L. to sign and then filed it with the court.

The juvenile court ordered S.L. into a plan of legal guardianship and ordered a minimum of one hour of supervised visitation a month for mother and S.L. S.L. was allowed to continue telephone contact with mother as long as the conversations were appropriate. The court set a postpermanency plan review hearing for July 18, 2022.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

By the time a dependency case reaches a section 366.26 hearing, there are few options available to the juvenile court. Indeed, " 'the sole purpose of the section 366.26 hearing is to select and implement one of the listed permanent plans.' " (*In re Christopher M.* (2003) 113 Cal.App.4th 155, 160.) The legislative preference is "for adoption over legal guardianship over long-term foster care." (*San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 885.)

Mother does not contend the juvenile court erred in selecting a legal guardianship as S.L.'s permanent plan. Nor could she object legitimately since she agreed to that option. Instead, she contends she asked Morse during their break-out session to ask

Mr. F. specific questions or to remove herself as counsel. Morse refused to do either. She claims she requested to ask questions of "the only witness," presumably Mr. F., but was denied by the juvenile court. At the end of the hearing, she asserts, she told the court in so many words, "I just want to state for the record that my attorney has not been acting in my best interest and refused to remove herself as attorney. She has been negligent." As evidence of this, mother points to a motion Morse filed on February 20, 2020, asking to be relieved as counsel, which she claims was granted by the court on March 30, 2022. Finally, mother contends S.L. asked to speak to the court but his attorney refused him. He also requested new counsel and was denied. The record does not support mother's claims.

First, there is no evidence mother asked to question Mr. F. and was denied. Even had she made such a request, it would not have been granted since she had an attorney representing her. Nor is there evidence that S.L. wanted to address the court but was prevented from doing so by his attorney. Rather, according to his attorney, S.L. did not have anything he wanted to say to the court.

To the extent mother attempts to raise a claim of ineffective assistance of counsel, it would fail. There is no evidence her attorney was ineffective in her questioning of Mr. F. The sole focus of the evidentiary portion of the hearing was whether mother's visitation with S.L. should be supervised or unsupervised. Mother's attorney was able to elicit from Mr. F. that S.L. could safely visit with mother unsupervised. While the juvenile court ultimately ordered supervised visitation, mother's attorney was able to produce evidence favorable to her position.

As to mother's quoted statement above, it does not appear in the record. Mother did, however, convey her displeasure in her attorneys' failure to present evidence that her social worker was biased. That evidence, however, was offered and rejected through the section 388 petition mother filed in December 2021. The court found the evidence was not new. Even if mother's appeal could be construed as challenging the court's denial of

her section 388 petition, it would fail not only on the grounds that the evidence was not new but because it would not serve S.L.'s best interest.  S.L. had been out of mother's care for two years and there was evidence she made manipulative statements and placed undue pressure on him when visits were unsupervised in the past.  In addition, he did not feel safe with her.

We conclude mother has not raised any arguable issues stemming from the section 366.26 hearing.  (*Phoenix H.*, *supra*, 47 Cal.4th at pp. 841–842.)  Accordingly, we dismiss the appeal.

## DISPOSITION

This appeal is dismissed.