Filed 5/12/14  In re J.C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.C. et al., Persons Coming Under the Juvenile Court Law. | D065214 |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES, | |
| Plaintiff and Respondent, | (Super. Ct. Nos. JJP2533, JJP2534 & JJP2535) |
| v. | |
| LUZ V., | |
| Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Imperial County, Christopher W. Yeager, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael L. Rood, County Counsel, Geoffrey P. Holbrook and Kyle Sand, Deputy County Counsel, for Plaintiff and Respondent.

Luz V. appeals orders entered at a permanency plan and selection hearing held under Welfare and Institutions Code section 366.26.[1]  She contends the court erred when it denied her attorney's request for a continuance, held a section 366.26 hearing in her absence, and terminated her parental rights on a finding that the beneficial parent/child relationship exception did not apply.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Luz is the mother of J.C., D.C. and A.C., now ages eight, four and two years old, respectively (collectively, the children).  Luz has a significant history of methamphetamine abuse.  The children's fathers do not appeal.[2]

In 2007, the Imperial County Department of Social Services (the Department) substantiated allegations of general neglect of J.C.  Luz received voluntary services for six months.  In 2009, when D.C. was born, the Department again substantiated allegations of general neglect, and a court-ordered family maintenance plan was implemented for J.C. and D.C.  After that plan proved ineffective, J.C. and D.C. were placed in out-of-home care.  Luz regained custody of her children in 2011.  Dependency jurisdiction was terminated in 2011.  Luz and the children lived with the maternal grandmother (grandmother).

---

1  Further statutory references are to the Welfare and Institutions Code.

2  J.C.'s father was deported to Mexico in 2006 after he was arrested on charges of having sex with Luz, who was then 14 years old.  (Luz was 15 years old at the time of J.C.'s birth.)  Except for four weeks in August and September 2013, D.C. and A.C.'s father was incarcerated throughout the dependency proceedings.  His criminal history includes charges for attempted murder, possession of a controlled substance, assault with a weapon, theft and possession while armed.

On January 5, 2012, the Department detained the children in protective custody and filed petitions under section 300, subdivisions (b) and (g) on their behalf. Grandmother reported that Luz had left the children in her care on New Year's Eve, even though Grandmother had told her that she could not take care of them. Luz said she could no longer tolerate being around the children, left the home, and did not return. Grandmother told the social worker that Luz had been abandoning the children off and on since they were born, leaving grandmother to raise them. She suspected that Luz was using methamphetamine again because she was increasingly aggressive and violent.

J.C., then five years old, said her mother did not like taking care of her and her brother and sister. Her grandmother and aunt helped her get ready for school, cooked breakfast and dinner for her, and took her to the doctor. J.C. reported that her mother constantly hit her and kicked her. J.C. said her mother "likes kicking me" because "she's mean and she likes being mean to us."

D.C., then two years old, and A.C., then six months old, tested positive for methamphetamine.

The Department located Luz on January 6. Luz said that she left to attend a New Year's Eve party and did not plan to return home that night. She was gone longer than she had planned. Luz assumed that grandmother would care for the children. Luz admitted to using methamphetamine several times in the past week.

In April 2012, the juvenile court sustained the petition, removed the children from parental custody, and placed them with grandmother. The court denied reunification services and set a section 366.26 hearing.

3

At the section 366.26 hearing in August 2012, the juvenile court ordered a permanency plan for the children in long-term foster care with grandmother, who had cared for them since their births. Because of concerns about grandmother's health, the court did not order a plan of guardianship.

At a postpermanency review hearing in September 2012, the social worker reported continuing concerns about grandmother's health and said she required assistance to care for the children. J.C. was "back and forth" between grandmother's home and her paternal grandparents' home. The court found that it was in the children's best interests to hold another permanency hearing under section 366.26, and set a hearing for January 23, 2013.

On January 23, 2013, the Department reported that it had not been able to serve notice of the section 366.26 hearing on Luz, who had moved to Missouri. The court rescheduled the section 366.26 hearing for June 3.

Luz returned to California in March.

In April, the juvenile court approved a change in the children's placement because of grandmother's poor health. With the concurrence of all parties, D.C. and A.C. were placed with their paternal grandmother, and J.C. was placed with her paternal aunt.

On June 3, Luz filed a modification petition seeking family reunification services. She asserted she had remained sober for a significant period of time and she and the children had a strong bond. At a hearing on June 26, Luz testified that she had been sober since January 12, 2013. She recently tried to take a drug test but it was too expensive. Luz attended Narcotics Anonymous meetings twice a week but was not currently in, nor had she completed, a drug

treatment program. Luz had supervised visitation with her children once or twice a week. The children wanted to live with her.

The juvenile court denied Luz's petition for reunification services, saying, ". . . it appears to me that [Luz] is moving in the right direction and should not be deterred from that and if she continues to do so there could be a positive result down the line." The court confirmed the postpermanency review hearing for September 23, 2013.

On July 5, the Department personally served Luz with a notice of hearing, stating the social worker was recommending termination of parental rights at a section 366.26 hearing on September 23.

On August 22, the Department filed an ex parte application to set a section 366.26 hearing. The juvenile court approved the request. The Department provided notice of the hearing to counsel.

On September 23, Luz's counsel objected to proceeding with the section 366.26 hearing, stating that he did not receive 45 days notice as required. The court found that notice to counsel was not timely and continued the hearing to October 9. Luz was present during the proceedings.

On October 1, Luz filed a modification petition seeking family reunification services. She asserted she was attending a substance abuse treatment and a parenting program, and she and the children shared a strong bond. Luz said she was drug free. The results of a hair follicle drug test were pending. The court scheduled a section 388 hearing on October 9, which was later continued to October 23.

Luz was present in court on October 23. Her attorney had a scheduling conflict. Without objection, the court continued the hearings to November 6.

Luz was not present in court on November 6. Her attorney asked for a short continuance, stating he did not know why she was not present and his efforts to contact her during the last two weeks were unsuccessful. The court did not find good cause to continue the hearings and denied the request. After hearing argument on Luz's request for reunification services, the court denied the petition for modification, finding that Luz had a very serious substance abuse problem and the children needed stability and security.

The court admitted the Department's section 366.26 and status review reports in evidence. The children were well adjusted and in good health, with no developmental concerns. J.C. said she felt safe and comfortable in her aunt's home, and D.C. and A.C. appeared to be happy and comfortable with their paternal grandparents. The children's respective caregivers were eager to adopt the children. The children's supervised visits with Luz were pleasant. However, on August 14, J.C. reported that her siblings' father, Fernando C., who had recently been released from custody, was at Luz's home. He was mean to her and made her cry. He hit Luz in the face. J.C. refused to have any more visits at Luz's home.

The court found that the children were adoptable and that termination of parental rights would not be detrimental to them. In making its findings, the court considered the children's wishes. The court noted the children had good visits with their mother, who interacted with them in a caring fashion. The court terminated parental rights.

DISCUSSION

A

*The Court Did Not Abuse Its Discretion When It Denied Luz's Request for a Continuance*

Luz contends the court abused its discretion in denying her request for a continuance. In support of her argument, she lists a number of factors she maintains favor her request, including: at the previous 388 hearing, the court commended her efforts and said that if she continued making progress, there could be a positive result at a future hearing; the court granted a two-week continuance due to a scheduling problem when she was present in court but at the next hearing, the court denied her attorney's request for a brief continuance to determine why she was not present and as a result, she was not able to testify in support of her modification hearing or in defense of termination of parental rights. Luz also argues a brief continuance was in the children's best interests because they loved her and repeatedly stated they wanted to be with her. Luz asserts the error was prejudicial because it affected her ability to prove her modification petition and present an affirmative defense to termination of parental rights.

Continuances in dependency proceedings are discouraged in view of the child's needs for prompt resolution of his or her custody status. (*Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1242.) However, in cases that necessitate additional time to allow "the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought" (§ 350, subd. (a)(1)), there is no legal impediment for slight and

justified delays provided the court complies with the statutory requirements authorizing continuances under section 352. (*In re Sean E.* (1992) 3 Cal.App.4th 1594, 1599.)

Section 352, subdivision (a) states that at a party's request, the juvenile court may continue any dependency hearing beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interests of the child. In considering the child's interests, the court is required to give substantial weight to a child's need for prompt resolution of his or her custody status, the need to provide a child with stable environments and the damage to a child from prolonged temporary placements. Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary for the continuance.

Luz does not meet her burden to show that the court abused its discretion when it denied her request for a continuance. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1322-1323 [appellant has burden to affirmatively show error and to further show that the error is prejudicial].) The children had been in temporary placement for almost 22 months. It was the second dependency proceeding for J.C. and D.C., and the second permanency hearing for all the children. At the time of the second permanency hearing, the focus was emphatically on the children's needs for permanency and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) Luz was present in court on October 23 when the court continued the hearings to November 6 and ordered her to appear. Her attorney did not present any justification for the delay. Instead, he told the court he had been unable to reach Luz for two weeks and did not know why she was not present. He did not assert he was unable to adequately present her modification petition or defend against termination of parental rights, and he did not make an offer of proof as to any

8

additional evidence or testimony that Luz would have presented had she been present.  The court did not err when it determined there was not good cause to continue the proceedings, and denied the request for a continuance.  (§ 352.)

Further, had the court erred, which it did not, Luz does not meet her burden to show she was prejudiced by the denial of her request to continue the hearings.  "We will not reverse for error unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result."  (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876.)  Luz's absence did not prevent the court from considering her modification petition on its merits.  Even if the petition established changed circumstances, in view of Luz's history of methamphetamine use and sporadic attention to the children's needs, the court could reasonably conclude that it was not in the children's best interests to postpone permanency in an uncertain attempt to reunify the family.  Similarly, her absence did not prevent her attorney from defending against termination of parental rights.  Luz's testimony would not have changed her long history of child neglect and sporadic involvement in their lives, or the urgency of the children's needs for a permanent home with stable and committed parents.

B

*The Court Did Not Abuse Its Discretion When It Determined That the Children's Needs for Permanency and Stability Outweighed Continuing the Parent/Child Relationship*

Luz contends the juvenile court erred when it terminated her parental rights to the children.  Luz argues the evidence established that she maintained regular contact and visitation with the children and they would benefit from continuing that contact.  (§ 366.26, subd. (c)(1)(B)(i).)  She acknowledges the proper standard of review is whether there is

substantial evidence to support the ruling.[3]  (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)

Luz argues the court failed to credit the social worker's report that both J.C. and D.C. said they

wanted to live with their mother and all the children appeared to enjoy spending time with her.

At a section 366.26 hearing, the court may select one of three permanency plans:

adoption, guardianship or long-term foster care.  (*In re Taya C*. (1991) 2 Cal.App.4th 1, 7.)

There is a strong preference for adoption over alternative permanency plans.  (*San Diego

County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 888; *In re Zachary

G.* (1999) 77 Cal.App.4th 799, 808-809.)  If the court determines the child is likely to be

adopted, the burden shifts to the parent to show termination of parental rights would be

detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1)

by a preponderance of the evidence.  (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343-

1345; but see § 366.26, subd. (c)(1)(A).)

An exception to termination of parental rights exists when "[t]he parents have

maintained regular visitation and contact with the child and the child would benefit from

continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  " '[B]enefit from continuing

---

3        Alternatively, Luz argues that where the issue on appeal turns on a failure of proof at trial, the question for the reviewing court is whether the evidence compels a finding in favor of the appellant as a matter of law.  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)  She argues that the Department succeeded on trial in spite of insufficient evidence; thus, this court should evaluate whether evidence of her beneficial relationships with the children was "(1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight to leave no room for a judicial determination that it was sufficient to support a finding.' [Citation.]"  (*Ibid.*)

We reject Luz's argument.  As we discuss in this section, there was no uncontradicted evidence to show that the children had beneficial relationships with Luz.  As in *In re I.W.*, *supra*, 180 Cal.App.4th at page 1529, "this is simply not a case where undisputed facts lead to only one conclusion."

the . . . relationship' " means " 'the [parent/child] relationship' . . . promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 (*Autumn H.*).)

Where the parent has continued to regularly visit and contact the child, and the child has maintained or developed a significant, positive, emotional attachment to the parent, "the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H., supra*, 27 Cal.App.4th at p. 575.)

We determine whether there is substantial evidence to support the court's ruling by reviewing the evidence most favorably to the prevailing party and indulging in all legitimate and reasonable inferences to uphold the court's ruling. (*In re Misako R., supra*, 2 Cal.App.4th at p. 545.) If there is substantial evidence supporting the court's ruling, the reviewing court must affirm the court's rejection of the exceptions to termination of parental rights under section 366.26, subdivision (c). (*Autumn H., supra,* 27 Cal.App.4th at p. 576.)

Luz's contention there is no substantial evidence to support termination of parental rights is without merit. Her argument relies on the social worker's testimony in June 2013 that both J.C. and D.C. said that they wanted to live with Luz. From that she extrapolates that she had a beneficial parent/child relationship with each of her children. However, an evaluation of

11

the strength of the parent/child bond is based on variables such as the child's age, the portion of the child's life spent in parental custody and the child's particular needs. (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.) The evaluation of the parent/child relationship is more nuanced than merely considering the child's wishes or aspirations; it involves an evaluation of the child's best interests in the context of the child's needs for permanency and stability. On review, we therefore apply the *Autumn H.* factors to determine whether there is substantial evidence to support the juvenile court's findings. (*Ibid.*)

Luz's youngest child, A.C., was removed from Luz's care when she was six months old. Before removal, Luz would not feed or diaper the baby, leaving those tasks to grandmother, whose health was compromised. Luz refused to be responsible for the children's care. She allowed A.C. to go hungry at night rather than get up to feed her. Instead of comforting A.C., she yelled obscenities at the baby and told her to shut up. D.C. was removed from Luz's custody when he was less than two months old. He was returned to her care when he was 21 months old and removed again less than 10 months later. J.C. was removed from Luz's care at age three, returned to her care at age four, and removed again when she was five. Luz disappeared from the home for days at a time. She was using methamphetamine and becoming increasingly aggressive and violent. Luz "constantly" hit D.C. and J.C., slapping D.C. in the face, and hitting both children in the head. J.C. told the social worker that Luz kicked her, explaining that her mother "liked kicking me."

Although Luz's relationships with the children improved when she was not responsible for their care, and her interactions with them during supervised visits were generally appropriate and pleasant, there is substantial evidence to show that she did not understand their

12

needs for safety and security, and continued to put her interests above their well-being. Luz resumed her relationship with Fernando (the father of the two youngest children) when he was released from prison in August 2013. She allowed J.C. and D.C. to have contact with him, even though Fernando did not comply with the social worker's requests to contact her. J.C. returned to her caregiver's home from a visit frightened and in tears after witnessing an altercation between Luz and Fernando. During another visit, D.C. was visiting Luz when Luz left with friends, allowing Fernando to care for D.C. D.C. said he was not afraid but "was sad not to be with his mom." We do not interpret D.C.'s remarks as wanting to live with Luz, as she contends. Viewed in context, D.C.'s remarks express sadness that his mother preferred to go out with her friends, cutting their visit short, rather than spending the time with him.

While the social worker did not observe any visits between the children and Luz, she spoke with J.C. and D.C, and their caregivers. The extended family was close and had good relationships with each other and with Luz. J.C.'s caregivers met her needs and were very involved in her education. D.C. and A.C. relied on their grandparents to meet their needs. The caregivers were committed to the children. The children's court-appointed special advocates also monitored the children's well-being. They reported that the children were doing well in their current placements. D.C. was developmentally on track and A.C. was a happy baby. J.C. appeared to finally be receiving the attention she needed and was doing better academically. When a child cannot be returned to parental custody, the child must be given every opportunity to bond with an individual who will assume the role of the parent. (*In re Brittany C.* (1999) 76 Cal.App.4th 847, 853-854.) These children are entitled to no less.

The court could reasonably infer the bonds between Luz and her children, although improved and pleasant, were not sufficiently strong to outweigh the benefits the children would gain from adoption. (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) There is substantial evidence to support the court's finding that the beneficial parent/child relationship exception does not apply. (§ 366.26, subd. (c)(1)(B)(i).)

## DISPOSITION

The findings and orders are affirmed.

BENKE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.

14