Filed 5/16/14  In re A.B. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D065188 |
| Plaintiff and Respondent, | (Super. Ct. No. NJ13887D) |
| v. | |
| K.B., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

K.B. appeals orders summarily denying her petition for modification under Welfare and Institutions Code section 388 and terminating parental rights to her daughter.  (Unless

otherwise indicated, all further statutory references are to the Welfare and Institutions Code.) She also challenges the finding the Indian Child Welfare Act (ICWA), title 25 United States Code section 1901 et seq. and Welfare and Institutions Code section 224 et seq. does not apply. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2013, K.B. was arrested and incarcerated for possession of methamphetamine, being a felon/addict in possession of ammunition, resisting arrest, destruction of evidence, and possession of drug paraphernalia. K.B. was seven months pregnant. She acknowledged using methamphetamine during the days preceding her arrest and during the first trimester of her pregnancy.

A.B. was born five weeks early. The San Diego County Health and Human Services Agency (Agency) detained A.B. in protective custody and filed a section 300 petition on her behalf. K.B. was addicted to methamphetamine. She had been using for approximately 11 years, since she was 12 years old. In earlier dependency proceedings, K.B. lost her parental rights to her eldest child and to her twin sons. K.B.'s probation officer said K.B. was on "continuous probation" due to her criminal history and noncompliance with court-ordered residential substance abuse treatment.

The Agency detained A.B. in foster care with the adoptive parents of her eldest brother.

In April, K.B. was released from jail to a residential substance abuse treatment program. She began having visits with A.B. A social worker said K.B. did not seem to be connected to the baby, and did not feed or change her unless prompted.

K.B. said Rolando E. was her daughter's father. Rolando denied paternity. He said he had been incarcerated during most of 2012 and had not had sexual relations with K.B. in 20

2

months. During the earlier dependency proceedings for her twin sons, K.B. alleged that he was the father. That allegation was disproved by a paternity test. The juvenile court found that Rolando's representations were credible and entered a judgment of nonpaternity in A.B.'s case, without objection.

At the jurisdiction and disposition hearing, the juvenile court bypassed reunification services and referred the case to a permanency plan selection and implementation hearing. (§ 366.26.)

In October, K.B. filed a modification petition (petition) seeking reunification services. (§ 388.) She claimed changed circumstances in that she had been in an inpatient substance abuse treatment program since April. All 10 of her drug tests were negative. In addition to the programs at the treatment center, she was attending weekly counseling, focusing on parenting, maintaining a drug free lifestyle, and making positive life choices. K.B. completed the Global Infant Program at Healthy Development Services and was participating in Systematic Training for Effective Parenting. Her counselor described her as "an ideal resident." She visited with A.B. several times a week and regularly contacted the foster mother for updates on the baby's health and development. K.B. did not explicitly state in the petition why it would be in A.B.'s best interests to grant her petition for reunification services.

On November 5, the juvenile court held an initial hearing on K.B.'s petition. The court read and considered K.B.'s petition, and found that K.B. did not meet her burden to show changed circumstances or that it would be in A.B.'s best interests to grant the modification sought, and denied the petition.

The section 366.26 hearing was held on November 20. The juvenile court admitted the Agency's reports and K.B.'s petition and supporting documents in evidence. The social worker

3

reported that overall A.B. was a healthy baby but there were some concerns about her development. For example, she was not sitting up unassisted or directly reaching for objects. Her physician referred her to physical and occupational therapy. A.B.'s caregiver was dedicated to meeting all of A.B.'s needs and wanted to adopt her. She had adopted A.B.'s brother three years earlier. The social worker did not believe that A.B. was bonded with K.B. A.B. was fussy and uncomfortable when visiting K.B. A.B. was not upset when the visits were done and, in fact, calmed down when she was returned to her caregiver. A.B. spent most of the visits with K.B. sleeping after crying for extended periods of time. Visit times were changed to avoid A.B.'s nap time, but the same pattern occurred. A.B. was bonded with her caregiver. At the end of one visit, when K.B. tried to kiss A.B., A.B. physically turned away from her and put her head on the caregiver's shoulder.

K.B. argued that she was dedicated to her daughter and wanted to be a parent. She asked the court not to terminate her parental rights because she and A.B. shared an attachment.

The juvenile court found that K.B. had regular and consistent contact with A.B. and that their visits were pleasant. However, the social worker or visitation monitor often had to intervene to help K.B. recognize A.B.'s cues and prompt a parental response to those cues. The court said whatever benefit was conferred upon A.B. by the continuation of the mother/child relationship was greatly outweighed by A.B.'s need for the stability and permanency of an adoptive placement. The court terminated parental rights.

## DISCUSSION

### A

Under section 388, a party may petition the court to change, modify or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of

4

the evidence, there is a change of circumstances or new evidence, and the proposed modification is in the child's best interests. (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Amber M.* (2002) 103 Cal.App.4th 681, 685.)

The court must liberally construe the petition in favor of its sufficiency. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309; Cal. Rules of Court, rule 5.570(a).) "The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H.,* at p. 310; *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1798-1799.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) When determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

We review a summary denial of a modification petition for abuse of discretion. (*In re Zachary G., supra,* 77 Cal.App.4th at p. 808.)

The juvenile court reasonably determined that K.B. did not allege facts in her petition sufficient to sustain a favorable decision on the petition. The factual and procedural history of the case, which included the history of K.B.'s loss of her parental rights to her three other children, shows that K.B. had only recently started to address her methamphetamine addiction, and her parenting skills were deficient. Generally, A.B. did not respond well to K.B. during the visits. K.B.'s petition did not contain any statement why the proposed modification was in A.B.'s best interests, and the petition fails for that reason alone. (§ 388.) The juvenile court noted that K.B.'s *implied* assertion of best interests—that a bonded parent/child relationship had developed between K.B. and A.B.—was not supported by any alleged facts. The history

of the case also shows that A.B. had been placed with her proposed adoptive parent when she was only a few days old, and was thriving in that home. She was being raised with her brother and was bonding with him. We conclude that the juvenile court did not abuse its discretion when it denied K.B.'s request for reunification services.

B

K.B. asserts the court erred when it determined the beneficial parent/child relationship exception under section 366.26, subdivision (c)(1)(B)(i) did not apply and terminated her parental rights. Her contention is without merit.

At a permanency plan hearing, the court may order one of three alternatives—adoption, guardianship, or long-term foster care. (*In re S.B.* (2008) 164 Cal.App.4th 289, 296-297.) If a child is adoptable, there is a strong preference for adoption over the alternative permanency plans. (*Id*. at p. 297; *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 888.) Once the court determines that a child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1). (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343-1345.)

Section 366.26, subdivision (c)(1)(B)(i) provides an exception to termination of parental rights when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." In order to overcome the statutory preference for adoption, the parent must prove that he or she occupies a parental role in the child's life, resulting in a significant, positive emotional attachment of the child to the parent. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827; *In re Elizabeth M*. (1997) 52 Cal.App.4th 318, 324.)

6

We determine whether there is substantial evidence to support the court's ruling by reviewing the evidence most favorably to the prevailing party, and indulging in all legitimate and reasonable inferences to uphold the court's ruling. (*In re S.B.*, *supra*, 164 Cal.App.4th at pp. 297-298; *In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) We do not reweigh the evidence, evaluate the credibility of witnesses, or indulge in inferences contrary to the findings of the juvenile court. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

K.B. did not prove she occupied a parental role in her daughter's life. The record permits the reasonable inference A.B. did not have a significant, positive emotional attachment to her mother. A.B. fussed and cried during a portion of the visits and then, worn out, slept for the rest of the visit. Visitation monitors had to prompt K.B. to attend to A.B.'s needs. K.B. was often unable to soothe A.B. Unlike A.B.'s interactions with her caregiver, A.B. appeared uncomfortable and generally did not laugh or smile when she was in K.B.'s care. The social worker did not believe that there was a parent/child bond between K.B. and A.B.

In view of the tenuous parent/child relationship and A.B.'s need for stability in the only home she knew, the juvenile court reasonably determined that terminating parental rights would not be detrimental to A.B. and she would greatly benefit from the security of a stable, permanent home with committed, capable adoptive parents. (§ 366.26, subd. (c)(1)(B)(i); *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

C

K.B. contends the juvenile court and Agency did not meet their burden to determine whether A.B. was an Indian child within the meaning of ICWA. She argues the court should have taken "active steps" to determine if Rolando is A.B.'s biological father. Rolando has possible Indian ancestry in a nonfederally recognized tribe, the Juaneño Band of Mission

7

Indians or Diegueno Tribe. K.B. argues the juvenile court abused its discretion when it did not provide notice to a nonfederally recognized tribe as provided under section 306.6. K.B.'s contentions are without merit.

ICWA protects the interests of Indian children, their tribes and families by establishing minimum federal standards for proceedings involving foster care placement or termination of parental rights. (25 U.S.C. § 1912; Welf. & Inst. Code, § 224.) ICWA applies to an Indian child under the age of 18 who is a member of a tribe, or who is eligible for tribal membership and whose biological parent is a member of a tribe. (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definition of " 'Indian child' "].) ICWA defines " 'parent' " as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child . . . . *It does not include the unwed father where paternity has not been acknowledged or established.*" (25 U.S.C. § 1903(9), italics added; Welf. & Inst. Code, § 224.1, subd. (c) [adopting federal definition of " 'parent' "].)

Rolando and K.B. were not married. He did not acknowledge paternity of A.B. Without objection from any party, including K.B., the juvenile court found that Rolando's representations of nonpaternity were credible and entered a judgment of nonpaternity. Thus, the juvenile court was not required to provide notice to any federally-recognized Indian tribes under ICWA or any nonfederally-recognized Indian tribes section 306.6. (*In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 [until biological paternity is established, an alleged father's possible Indian heritage does not trigger ICWA notice requirements].)

8

DISPOSITION

The orders are affirmed.

McINTYRE, J.

WE CONCUR:


HALLER, Acting P. J.


O'ROURKE, J.