Filed 9/10/20  C.C. v. Superior Court CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| C.C., <br><br>     Petitioner, <br><br> v. <br><br> SUPERIOR COURT FOR THE CITY AND COUNTY OF SAN FRANCISCO, <br><br>     Respondent; <br><br><br> SAN FRANCISCO HUMAN SERVICES AGENCY et al., <br><br>     Real Parties in Interest. | A160270 <br><br> (San Francisco City & County <br>  Super. Ct. No. JD153034) |

In this juvenile writ proceeding, C.C. (mother) seeks extraordinary relief from the juvenile court order setting a second permanency planning hearing for her son, Caden C., pursuant to section 366.26 of the Welfare and Institutions Code.[1]  In February 2018, at the first permanency planning hearing in this matter, the juvenile court found Caden adoptable but declined

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.  All rule references are to the California Rules of Court.

1

to terminate parental rights, citing the beneficial relationship between Caden and mother. At a postpermanency review hearing held in April 2019, the juvenile court set a second hearing pursuant to sections 366.3 and 366.26 to reconsider a permanent plan of adoption for the minor. Mother argues that this was error because "nothing had really changed" in the intervening 14 months since a beneficial relationship had been found. We disagree and deny the petition.

## BACKGROUND

A detailed history of these extended juvenile dependency proceedings can be found in our prior opinions in this matter, and we will not repeat it here. (See *In re Caden C.* (2019) 34 Cal.App.5th 87, review granted July 24, 2019, S255839 (*Caden C. I*); *In re Caden C.* (May 22, 2020, A158063) (*Caden C. II*) [nonpub. opn.]; *C.C. v. Superior Court* (Aug. 28, 2017, A151400) (*C.C.*) [nonpub. opn.].)[2] As stated above, the juvenile court declined to terminate mother's parental rights at the first permanency planning hearing in February 2018, relying on the beneficial relationship exception to adoption. The minor's caregiver, Ms. H., was unwilling to proceed with legal guardianship due to concerns that mother's ongoing disruptive behaviors would negatively impact both her family and Caden's stability. Recognizing Caden's bond with Ms. H. and the importance of the placement to Caden's well-being, the Agency recommended an interim plan of long-term foster care,

---

[2] We grant the July 2020 request from the San Francisco Human Services Agency (Agency) that we take judicial notice of certain juvenile court documents from the appellate record in *Caden C. II*. (See Evid. Code, §§ 452, subds. (a) & (d)(1), 459, subd. (a).) For a more complete understanding of the procedural posture of the case, we also grant the Agency's request that we take judicial notice of the juvenile court's recent minute order of June 24, 2020. (See *ibid*.) Finally, on our own motion, we take judicial notice of our prior opinions in this matter. (See *ibid*.; see also *People v. Woodell* (1998) 17 Cal.4th 448, 458–459.)

while pledging to pursue a more secure permanent plan for the minor in Ms. H.'s home.

After the juvenile court adopted the Agency's recommendation, both Caden and the Agency appealed. In April 2019, we reversed the juvenile court's permanency planning orders, holding that the juvenile court had abused its discretion in concluding, on this record, that the strength and quality of Caden's relationship with mother in a tenuous placement outweighed the benefits of a permanent adoptive home. (*Caden C. I, supra,* 34 Cal.App.5th 87, 107–116.) The matter is currently pending before the Supreme Court, which will consider the proper scope of the beneficial parental relationship exception to adoption.

In the meantime, proceedings continued in the juvenile court. In September 2018, the court held a six-month postpermanency review for Caden. Caden was happy living with Ms. H. and was integrated into the family. Ms. H. was reconsidering becoming Caden's legal guardian. Mother and Caden visited monthly in a supervised setting. While the visits were reported to be generally positive, concerns arose regarding inappropriate and excessive gift giving which caused conflict in Ms. H.'s household. The court continued Caden in long-term foster care with a goal of legal guardianship.

In advance of the 12-month postpermanency review, the Agency filed a report detailing a host of disruptive behaviors by mother, including refusing to follow the rules with respect to gift giving, expressing disapproval to Caden regarding his current medication and therapist, suggesting to Caden that he should intervene in the court process on her behalf, sending demanding and hostile texts to Ms. H. about attending a soccer game, and calling Ms. H. on a blocked number to lobby for guardianship over adoption. Given this ongoing conflict, Ms. H. was no longer open to guardianship but

3

indicated her desire to adopt Caden and make him an official member of the family.  The Agency expressed concern to the court that, although Ms. H. clearly loved Caden, mother's behavior toward the caregiver could disrupt the minor's permanency in her home.  Noting that Caden had been in foster care for many years and was thriving in his current placement, the Agency recommended that another section 366.26 hearing be set so that the juvenile court could again consider adoption as Caden's permanent plan.

At the 12-month postpermanency hearing in March 2019, mother's attorney questioned the authority of the juvenile court to set a second permanency planning hearing under the circumstances of the case, and the court continued the matter to allow briefing on the issue.  At the continued hearing on April 9, mother's attorney argued the juvenile court's previous finding rejecting adoption based on the beneficial relationship exception made conducting a new permanency planning hearing improper under theories of collateral estoppel and res judicata.  He further asserted that the record failed to disclose changed circumstances sufficient to support setting such a hearing.

Rejecting mother's arguments, the juvenile court set a new permanency planning hearing for July 31, 2019.  That same day, we issued our opinion in *Caden C. I,* reversing the juvenile court's February 2018 decision to forgo adoption for Caden and directing that a new permanency planning hearing be held.  (See *Caden C. I*, *supra*, 34 Cal.App.5th at pp. 115–116.)  On April 12, mother filed a notice of intent to file a writ petition challenging the juvenile court's April 9 setting order.  However, for reasons that are unclear, the notice was not forwarded to this court for 14 months, and it appears that no action was taken by the superior court clerk to prepare the record or notify counsel of the filing.  (See rule 8.450(g) & (h).)

On June 13, 2019, the juvenile court held a hearing on the status of the remittitur in *Caden C. I* at which it "confirmed and maintained" the previously set permanency planning hearing date of July 31. The Agency filed reports in advance of the scheduled hearing recommending a permanent plan of adoption. In addition, the Agency noted mother's ongoing difficulty with following the visitation rules, which caused stress for the foster family and Caden around visits. At one visit, mother gave Caden her email address and explained how he could find her on Facebook, even though such unsupervised contact was not permitted. For his birthday the following month, mother gave the minor a Chromebook, a bicycle, and other items. The Chromebook caused conflict in the foster home due to house rules restricting internet access. Both professionals consulted by the Agency, including the minor's therapist, recommended that visits be reduced to lessen their impact on Caden.

On July 24, 2019, the Supreme Court granted review in *Caden C. I.* At the permanency planning hearing on July 31, 2019, the juvenile court continued the permanency issue for a progress report in light of the Supreme Court's grant of review. However, it ordered a reduction in visitation with Caden from monthly to once every other month due to mother's destabilizing behaviors. In doing so, the court concluded that " 'it is highly unlikely that Mother is going to be able to follow the rules no matter what they are and however she is admonished by the Court.' "[3]

Progress reviews were held in October and December 2019 at which everything remained stayed, and the permanency planning hearing was continued to March 2020. In advance of the March hearing, the Agency filed

[3] Mother appealed from this reduction in visitation, and in May 2020, we affirmed the juvenile court's order. (See *Caden C. II, supra,* A158063.) .

an addendum report, noting that mother continued to push the boundaries at visits by bringing unapproved gifts, asserting that Caden continued to receive excellent care in his foster placement, and renewing its request that parental rights be terminated so that Caden could be adopted. On March 19, the matter was continued to April 22 with the agreement of the parties in light of the public health emergency caused by the COVID-19 pandemic. (See generally Gov. Code, § 68115.) The Agency was given discretion to facilitate a supervised phone/Skype visit between mother and Caden so long as mother did not promise gifts or discuss court proceedings.

At the hearing on April 22, 2020, the juvenile court rejected mother's continuing objection to Caden's medication, finding it beneficial in that there were no side effects and it helped the minor focus. It set the permanency planning hearing for May 27, 2020 and otherwise continued the matter to April 29 for Title IV-E review findings. (See *In re Joshua S.* (2007) 41 Cal.4th 261, 267, fn. 3 ["Title IV-E of the Social Security Act (42 U.S.C. § 670 et seq.) establishes a cooperative assistance program under which counties provide payments to foster care providers on behalf of qualified children in foster care, using a combination of federal, state, and county funds."].) At the April 29 hearing, the court found Caden's placement appropriate, concluded the Agency had complied with the case plan, noted the second permanency planning hearing had been continued several times due to the pending appeal, and opined that the likely date for finalizing the minor's permanent plan was at the May 27 hearing.[4]

On May 8, 2020, mother filed a petition for writ of supersedeas in the Supreme Court seeking a stay of the permanency planning hearing, which

_____

[4] Mother's appeal from the juvenile court's orders of April 22 and 29, 2020, is currently pending before this court. (*In re C.C.*, A160213.)

the high court denied on May 22.  On that same day, we issued our decision in *Caden C. II*, affirming the juvenile court's July 2019 reduction in mother's visitation.  (*Caden C. II*, *supra*, A158063.)  At the continued permanency planning hearing on May 27, 2020, mother requested a contested hearing and indicated she would be seeking a bonding study and requesting a stay of the proceedings.  The court set the contested review hearing over three dates in September and October 2020 and continued the bonding study and stay requests to June 24.  On June 3, 2020, mother's notice of intent to file a writ petition in the instant proceedings was transmitted to our court by the superior court clerk.  On June 24, the juvenile court granted mother's request for a bonding study but denied her request for a stay.  The contested permanency planning hearing is currently scheduled to begin on September 30, 2020.

## DISCUSSION

Before reaching the merits of the petition, we first address the Agency's contention that mother has waived or otherwise abandoned her challenges to the juvenile court's setting order by failing to press them when it was clear that her notice of intent was not being processed in the court below.  The Agency argues that mother had many opportunities to alert the superior court clerk and the parties of her intention to proceed with the writ petition despite this unexplained delay, yet failed to do so even while appealing the visitation order entered at the first calling of the permanency planning hearing in July 2019 and litigating her May 2020 petition for writ of supersedeas in the Supreme Court.  Emphasizing that the extraordinary writ process under section 366.26 is intended to allow appellate courts to hear and resolve promptly any claims of error in a juvenile court's setting order, the

Agency maintains that mother should be deemed to have abandoned her petition by acquiescing to its 14-month processing delay.

We are sympathetic to the Agency's position. However, mother timely filed her notice of intent and was not required to file her corresponding writ petition until 10 days after she was notified by the reviewing court clerk that the record had been filed, an event which did not occur until June 29, 2020. (See rules 8.450(j)(2) & 8.452(c)(1).) Moreover, while mother's counsel could have followed up with the court, we have not been presented with, nor have we uncovered, any explicit statement in the record indicating an intent by mother to abandon her writ petition. Given the unusual path through which these writ proceedings reach us, we conclude the better course is to address mother's petition on the merits. Doing so will safeguard mother's procedural rights and streamline any possible future litigation in this highly contested matter. (See § 366.26, subd. (*l*)(1) [precluding further appellate review *unless* a writ petition was timely filed which substantively addressed specific challenges not decided on their merits]; see also *id.*, subd. (*l*)(4)(B) [encouraging appellate courts to determine all writ petitions filed in this context on their merits].) Turning to the merits, we conclude that the juvenile court did not err in setting a permanency planning hearing.

When a dependent child is found not suitable for adoption at a permanency planning hearing because the beneficial relationship exception applies, the juvenile court " 'shall either order that the present caretakers or other appropriate persons shall become legal guardians of the child or order that the child remain in long-term foster care. Legal guardianship shall be considered before long-term foster care, if it is in the best interests of the child and if a suitable guardian can be found.' " (*Sherri T. v. Superior Court* (2008) 166 Cal.App.4th 334, 340 (*Sherri T.*); § 366.26, subd. (c)(4)(A).) Under

8

such circumstances, a permanent plan of guardianship or long-term foster care has been selected because the juvenile court has found a "compelling reason" for determining that adoption would be detrimental to the child due to one of the statutory criteria delineated in section 366.26. (§ 366.26, subd. (c)(1)(B); *Caden C. I*, *supra*, 34 Cal.App.5th at p. 103.)

Section 366.3 requires that a postpermanency review hearing be held at least every six months for dependents placed in long-term foster care pursuant to the above-described statutory scheme. The review "may be conducted by the court or an appropriate local agency," but a review must be conducted by the court at least once every 12 months. (§ 366.3, subd. (d).) At the postpermanency review hearing, the reviewing body inquires about "the progress being made to provide a permanent home for the child," considers "the safety of the child," and makes other determinations such as whether the permanent plan continues to be appropriate and whether efforts have been made to "identify a prospective adoptive parent or legal guardian." (*Id.*, subd. (e).) If parental rights have not been terminated, parents are entitled to be notified and to participate in postpermanency review hearings. (*Id.*, subd. (f).)

When the juvenile court conducts the postpermanency review hearing at 12-month intervals, it is required, pursuant to subdivision (h)(1) of section 366.3, to "consider all permanency planning options for the child, including whether the child should be returned to the home of the parent, placed for adoption, . . . or appointed a legal guardian, . . . or, if compelling reasons exist for finding that none of the foregoing options are in the best interest of the child, . . . whether the child should be placed in another planned permanent living arrangement." Moreover, the statute directs that "[t]he court *shall* order that a hearing be held pursuant to Section 366.26, unless it determines

9

by clear and convincing evidence that there is a compelling reason for determining that a hearing held pursuant to Section 366.26 is not in the best interest of the child because the child is being returned to the home of the parent, the child is not a proper subject for adoption, or no one is willing to accept legal guardianship . . . ." (§ 366.3, subd. (h)(1), italics added.) "If the county adoption agency, or the department when it is acting as an adoption agency, has determined it is unlikely that the child will be adopted or one of the conditions described in paragraph (1) of subdivision (c) of Section 366.26 applies, that fact shall constitute a compelling reason . . . ." (*Ibid.*)

"Thus, section 366.3 expressly contemplates that, absent a 'compelling reason,' a section 366.26 hearing will be scheduled at any postpermanency status review hearing conducted by the juvenile court pursuant to section 366.3 in a case in which the previously selected permanent plan was long-term foster care. The statutory scheme ensures that efforts are continuously being made to find a more permanent placement for a child in long-term foster care. The legislative preference is 'for adoption over legal guardianship over long-term foster care.' [Citation.] When the court conducts the review hearing, it 'proceeds under a presumption that long-term foster care is *inappropriate*. It is obligated to act accordingly.' " (*M.T. v. Superior Court* (2009) 178 Cal.App.4th 1170, 1178 (*M.T.*); see *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 888 (*San Diego County*).) Thus, a parent wishing to block reconsideration of the child's permanent plan under these circumstances bears the burden of proving there is a compelling reason to forgo a new 366.26 hearing because it is not in the child's best interest. (*M.T.*, at p. 1179; *Sherri T, supra,* 166 Cal.App.4th at p. 341.)

Mother emphasizes the juvenile court's determination in February 2018 that termination of parental rights would be detrimental to Caden due to the existence of a beneficial parent-child relationship between Caden and mother as described in section 366.26, subdivision (c)(1)(B)(i). She claims that the court's more recent setting of a new permanency hearing—in which it impliedly found under subdivision (h)(1) of section 366.3 "that there was no compelling reason to determine that setting such a hearing was not in Caden's best interests"—was unsupported by the record since very little had changed with respect to Caden's relationship with mother or in regards to his other circumstances. If anything, mother argues, circumstances had changed for the better because she was now actively engaging in substance abuse treatment and parenting education. Mother's arguments misapprehend the strong legislative preference for setting permanency planning hearings at 12-month intervals for children in long-term foster care as well as the evidence before the juvenile court.

"[W]hen a child is in long-term foster care, the court *must* set the matter for a section 366.26 hearing at a [12-month] section 366.3 postpermanency status review hearing unless there is clear and convincing evidence that it would not be in the best interest of the child to do so." (*M.T.*, *supra*, 178 Cal.App.4th at p. 1180, citing § 366.3, subd. (h).) Mother bore the burden of proving that a second permanency planning hearing was not in Caden's best interest and presented no evidence other than noting that a beneficial relationship had been found at the prior permanency planning hearing 14 months ago. This was plainly inadequate. (*Sherri T.*, *supra*, 166 Cal.App.4th at p. 341 [finding "inadequate" the argument that beneficial relationship had been found just six months earlier given that "dependency

11

proceedings are dynamic, and the statutory scheme is designed to allow the juvenile court to assess and reassess the child"].)

Mother also contends that changed circumstances must be shown before the juvenile court can set a new permanency planning hearing under section 366.3 and that they have not been shown in this case. (See rule 5.740(b)(5) ["If circumstances have changed since the permanent plan was ordered, the court may order a new permanent plan under section 366.26 at any subsequent hearing, or any party may seek a new permanent plan by a motion filed under section 388 and rule 5.570."]; see also *In re Maria Q.* (2018) 28 Cal.App.5th 577, 597–598 [same].) The Agency disagrees, arguing that changed circumstances and/or the filing of a modification petition pursuant to section 388 are only required when a new permanency planning hearing is set at a time other than a 12-month postpermanency court review. (See *San Diego County*, *supra*, 13 Cal.4th at pp. 887–888; *Sherri T.*, *supra*, 166 Cal.App.4th at p. 340 ["While the juvenile court is mandated to order a new permanent plan selection hearing every 12 months, unless such a hearing is not in the best interests of the child, it may order a new permanent plan selection hearing more frequently if circumstances have changed."].)

We believe the Agency has the better argument. When setting a new permanency planning hearing in accordance with subdivision (h) of section 366.3, the juvenile court is not deciding that a new permanent plan is appropriate for the dependent minor. It is merely concluding that the interests of the minor are best served by taking "another look" at the question. (See *Sherri T., supra*, 166 Cal.App.4th at p. 341.) It is true that in this case only slightly more than a year had passed since the first permanency planning hearing at which a beneficial relationship between Caden and mother had been found. However, while such a period of time

12

" 'may not seem . . . long . . . to an adult[,] . . . [it] can be a lifetime to a young child.' " (*San Diego County, supra*, 13 Cal.4th at p. 890, citing *In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) Indeed, as has been oft repeated, " '[c]hildhood does not wait for the parent to become adequate.' " (*San Diego County*, at p. 890.) Thus, the mere passage of time and Caden's continued successful placement with a caregiver who wishes to adopt is sufficient reason to revisit the issue.

Moreover, even if a finding of more significant changed circumstances was required in this case, the record amply supports such a finding. At the time of the first permanency planning hearing, Ms. H. expressed concern that mother's disruptive behaviors would negatively impact both her family and Caden's stability. These fears have proven justified, leading Ms. H. to reject a permanent plan of guardianship for Caden, despite her obvious love for the minor. These facts are more than sufficient to conclude that it is in Caden's best interests to reconsider whether the strength and quality of his relationship with mother outweigh the benefits of a permanent adoptive home. There is certainly no evidence of a compelling reason that such a course of action is *not* in his best interests. Finally, mother will have an opportunity at the second permanency planning hearing to argue in favor of the continued application of the beneficial relationship exception.

## DISPOSITION

The petition is denied on the merits. (See § 366.26, subds. (*l*)(1)(C), (*l*)(4)(B).) Because the permanency planning hearing in this matter is set for September 30, 2020, this opinion is final as to this court immediately. (Rule 8.490(b)(2)(A).) Mother's request for a stay of the permanency planning hearing is denied as moot.

13

_____

Sanchez, J.

WE CONCUR:

_____

Margulies, Acting P. J.

_____

Banke, J.

_A160270  C.C. v. Superior Court_

14