Filed 12/9/20  In re Caden C. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re Caden C., A Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. CHRISTINE C., Defendant and Appellant. | A160213 (San Francisco County Super. Ct. No. JD15-3034) |

Almost three years ago, an initial permanency planning hearing was held for Caden C. in February 2018 pursuant to section 366.26 of the Welfare and Institutions Code[1] in this protracted dependency matter involving Christine C. (mother).  At the conclusion of that hearing, the juvenile court found Caden adoptable but declined to terminate parental rights based on the beneficial relationship between Caden and mother.  On appeal, we reversed this order, and the matter in currently pending review in the California Supreme Court.  In the meantime, dependency proceedings

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

continued in the juvenile court, which determined in April 2019 that a second permanency planning hearing should be held to reconsider adoption for Caden. That hearing—initially set for July 2019—has been continued repeatedly without any finding of good cause or a determination that further delay was in Caden's best interests. The permanency planning hearing is currently scheduled for January 2021. In this appeal, mother challenges the juvenile court's April 2020 order declining to hold a postpermanency review hearing pursuant to section 366.3 for Caden while the permanency planning hearing remained pending. Under the unusual facts of this case, we affirm with directions to hold a permanency planning hearing for Caden forthwith.

## I. BACKGROUND

A detailed history of these extended juvenile dependency proceedings can be found in our prior opinions in this matter, and we will not repeat it here. (See *In re Caden C.* (2019) 34 Cal.App.5th 87, review granted July 24, 2019, S255839 (*Caden C. I*); *C.C. v. Superior Court* (Sept. 10, 2020, A160270,) [nonpub. opn.] (*C.C. II*); *In re Caden C.* (May 22, 2020, A158063) [nonpub. opn.] (*Caden C. II*); *C.C. v. Superior Court* (Aug. 28, 2017, A151400) [nonpub. opn.] (*C.C. I*).) To summarize, over the course of mother's 30-year history with the child welfare system, all six of her children have been removed from her care due to her chronic substance abuse, neglectful conduct, and involvement in domestic violence. (*Caden C. I*, at p. 92.) Caden, mother's youngest child, was initially removed in September 2013 at the age of four. (*Id.* at pp. 92–93.) After extended attempts at reunification, a permanency planning hearing was held for Caden in February 2018 pursuant to section 366.26. The juvenile court found Caden adoptable but declined to terminate mother's parental rights, citing the beneficial relationship between Caden and mother. Caden was placed in a permanent plan of long-term foster care. (*Caden C. I*, at pp. 91, 102–103.)

2

In September 2018, the juvenile court held a six-month postpermanency review for Caden, maintaining him in long-term foster care. In advance of the minor's March 2019 postpermanency review, the Agency recommended that a new section 366.26 hearing be set so that the juvenile court could again consider adoption as Caden's permanent plan. At the continued hearing on April 9, the court set a second permanency planning hearing for July 31, 2019.[2] Later that same day, we issued our opinion in *Caden C. I*, *supra*, 34 Cal.App.5th 87, reversing the juvenile court's reliance on the beneficial relationship exception to adoption in Caden's first permanency planning hearing.

On July 24, 2019, the Supreme Court granted review in *Caden C. I*. At the second permanency planning hearing on July 31, 2019, the juvenile court continued the permanency issue for a progress report in light of the Supreme Court's grant of review. The court also ordered a reduction in visitation with Caden from monthly to once every other month due to mother's continuing destabilizing behaviors.[3] Progress reviews were held in October and December 2019 at which everything remained stayed, and the permanency planning hearing was continued to March 2020. In advance of the March hearing, the Agency filed an addendum report, renewing its request that parental rights be terminated so that Caden could be adopted. On March 19, the matter was continued to April 22 with the agreement of the parties in light of the public health emergency caused by the COVID-19 pandemic. (See generally Gov. Code, § 68115.)

---

[2] Mother filed a writ petition challenging this setting order, and we denied that petition on its merits in September 2020. (See *C.C. II*, *supra*, A160270.)

[3] Mother appealed from this reduction in visitation, and in May 2020, we affirmed the juvenile court's order. (See *Caden C. II*, *supra*, A158063.)

At the hearing on April 22, 2020, the juvenile court set the permanency planning hearing for May 27, 2020.  Agency counsel had prepared certain Title IV-E review findings and asked that these findings be made to ensure the continuation of federal funding in the case.  (See *In re Joshua S.* (2007) 41 Cal.4th 261, 267, fn. 3 ["Title IV-E of the Social Security Act (42 U.S.C. § 670 et seq.) establishes a cooperative assistance program under which counties provide payments to foster care providers on behalf of qualified children in foster care, using a combination of federal, state, and county funds."].)  Mother's attorney objected, arguing that a full postpermanency review was required under section 366.3 because a year had passed since the last review hearing.  The court found good cause to continue the matter to April 29 to resolve this issue, and instructed both attorneys to prepare proposed findings.

Mother submitted proposed findings with related argument in advance of the continued hearing.  She asserted that a review hearing supported by an adequate report under section 366.3 must be held so that all required findings could be made, including findings regarding the Agency's failure to return the minor to the safe home of mother and with respect to mother's progress in addressing the issues that led to dependency in this matter.  Mother also sought to increase her visitation back to monthly.  Agency's counsel responded that Title IV-E federal funds were at risk if the Title IV-E findings were not made by April 30.  Counsel did not explain why the Agency waited until about a week before the deadline to seek these required findings.  On April 29, the court concluded that mother could present evidence in support of her interests at the upcoming permanency planning hearing and

4

made only those findings required to maintain compliance with Title IV-E. Mother timely appealed from this order.[4]

At the continued permanency planning hearing on May 27, 2020, mother requested a contested hearing, which the court set over three dates in September and October 2020. On June 24, the juvenile court granted mother's request for a bonding study but denied her request for a stay of the pending permanency planning hearing. We have been informed by counsel in this case that the contested permanency planning hearing was again continued, this time at the request of minor's counsel, and is currently scheduled for January 11, 13, and 20, 2021.

## II. DISCUSSION

We are deeply concerned that Caden's permanency planning hearing has been delayed by more than a year in this matter. Under the legislative scheme governing dependency proceedings, the court attempts, for a specified period of time, to reunify the family when a child is removed from the home. (*In re Celine R.* (2003) 31 Cal.4th 45, 52.) At this stage, a parent's fundamental rights remain paramount. If reunification efforts fail, however, the court terminates reunification services and the emphasis shifts to the child's need for permanency and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309 (*Marilyn H.*).) In this case, mother's reunification services were terminated in August 2016. At the first permanency planning hearing in February 2018, the juvenile court found Caden adoptable but declined to terminate parental rights at that time, citing the beneficial relationship between Caden and mother. Caden was placed in long-term foster care.

---

[4] Mother's October 2020 request for judicial notice, which we deferred for consideration with the merits of the appeal, is denied as unnecessary to our decision. On our own motion, we take judicial notice of our prior opinions in this matter. (Evid. Code, §§ 452, subds. (c) &(d), 459, subd. (a).)

5

Postpermanency reviews regarding minors placed in long-term foster care are governed by section 366.3. That statute provides that if a minor "is in a placement other than the home of a legal guardian and jurisdiction has not been dismissed, the status of the child *shall be reviewed* at least every six months." (§ 366.3, subd. (d), italics added.) The review must be held by the juvenile court at least every 12 months. (*Id.*, subd. (d)(3).) Further, during the postpermanency review hearing held by the juvenile court at 12-month intervals, "[t]he court *shall* order that a hearing be held pursuant to Section 366.26, unless it determines by clear and convincing evidence that there is a compelling reason for determining that a hearing held pursuant to Section 366.26 is not in the best interest of the child because the child is being returned to the home of the parent, the child is not a proper subject for adoption, or no one is willing to accept legal guardianship . . . ." (§ 366.3, subd. (h)(1), italics added.) Finally, if the court orders a hearing pursuant to section 366.26, that hearing "*shall* be held no later than 120 days from the date of the 12-month review at which it is ordered." (§ 366.3, subd. (i), italics added.)

Thus, section 366.3 expressly contemplates that, absent a "compelling reason," a section 366.26 hearing will be scheduled at least annually at postpermanency review hearings for minors in long-term foster care. "The statutory scheme ensures that efforts are continuously being made to find a more permanent placement for a child in long-term foster care. The legislative preference is 'for adoption over legal guardianship over long-term foster care.' [Citation.] When the court conducts the review hearing, it 'proceeds under a presumption that long-term foster care is *inappropriate*. It is obligated to act accordingly.' " (*M.T. v. Superior Court* (2009) 178 Cal.App.4th 1170, 1178; see *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 888.)

As stated above, at Caden's 12-month postpermanency plan review, the Agency recommended that a new section 366.26 hearing be set so that the juvenile court could again consider adoption as Caden's permanent plan. At the continued hearing on April 9, the court set a second permanency planning hearing for July 31, 2019. Mother challenged this setting order via petition for extraordinary writ, which we subsequently denied. (See *C. C. II*, *supra*, A160270.)

On July 24, 2019, the Supreme Court granted review in *Caden C. I*. It appears from the record that the juvenile court and the parties were operating under the misapprehension that a second permanency planning hearing should not be held until the appellate proceedings before the Supreme Court have been resolved and the remittitur issued. This is, of course, incorrect. "[W]hen an appellate court reverses a prior order of the trial court on a record that may be ancient history to a dependent child, the trial court must implement the final appellate directive in view of the family's current circumstances and any developments in the dependency proceedings that may have occurred during the pendency of the appeal." (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1501; see Code Civ. Proc., § 917.7; *In re Natasha A.* (1996) 42 Cal.App.4th 28, 39–40.)[5] As we previously explained, "childhood does not wait for the completion of our court process" and the passage of time or a "significant change in circumstances" can affect the juvenile court's determination of what permanent plan is appropriate for the minor. (*Caden C. I, supra*, 34 Cal.App.5th at p. 115.) Thus, however the Supreme Court resolves the legal questions raised by the first permanency

---

[5] Furthermore, mother's writ of supersedeas to stay the scheduled permanency planning hearing was denied by the Supreme Court on May 22, 2020, and no stay has issued from this court.

planning hearing held almost three years ago, the findings at the second hearing will be determinative of Caden's permanency status.

Repeated continuances have delayed the second permanency planning hearing in this matter for more than a year and the required focus on Caden's urgent need for stability and permanence has been lost in this endless litigation. The question remains, what should be done at this point? Mother argues that despite the fact that a permanency planning hearing has been set and remains pending, another hearing should have been held in April 2020 pursuant to section 366.3 because a year had passed since the last 12-month postpermanency review in this case. She asks that we reverse the juvenile court's April 2020 order denying her request to hold such a hearing and remand with directions that a proper postpermanency review be conducted.

We are sympathetic to mother's position. Periodic review hearings are essential to the proper supervision of dependent children in long-term foster care, both to ensure that their current needs are being met and to provide a plan for permanence at the earliest possible opportunity. (See generally § 366.3) Here, while an addendum to the permanency planning report was provided by the Agency in March 2020—and other pressing issues such as those involving visitation and medication were addressed by the juvenile court at its recurrent status hearings or through modification motions filed pursuant to section 388—such procedures are not necessarily a substitute for a full periodic review conducted in accordance with section 366.3. The Agency concedes that mother should have received a 366.3 hearing within the 12-month period.

Nevertheless, we cannot ignore the fact that it is now December 2020 and a contested permanency planning hearing is currently scheduled to take place in January 2021. Further, while it is true that section 366.3 provides that the status of a dependent child in long-term foster care *"shall be*

8

*reviewed*" on a periodic basis (§ 366.3, subd. (d), italics added), it also states that once a juvenile court sets a hearing pursuant to section 366.26 such hearing "*shall* be held no later than 120 days from the date of the 12-month review at which it is ordered" (§ 366.3, subd. (i), italics added). Clearly, neither of these mandates were followed under the unusual facts of this case. Moreover, since the statute presumes the scheduled permanency planning hearing will be conducted within four months—a requirement completely ignored here by both the parties and the juvenile court—the statutory language of section 366.3 does not answer the question whether a postpermanency review should be conducted after a section 366.26 hearing has been set and remains pending. In these unique circumstances, we fall back on the Supreme Court's dictate that, at this stage in the proceedings, the emphasis has shifted to the child's need for permanency and stability. (*Marilyn H.*, *supra*, 5 Cal.4th at p. 309.) We thus conclude that the currently pending permanency planning hearing should move forward and be held as expeditiously as possible.

Indeed, to the extent prejudicial error has been alleged based on the conduct of proceedings below, we find it harmless under any applicable standard on these facts. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [requiring reversal only if it is reasonably probable that mother would have obtained a more favorable result had the section 366.3 hearing been held]; see also *Chapman v. California* (1967) 386 U.S. 18, 24 [requiring a showing that the error was harmless beyond a reasonable doubt].) The upcoming permanency planning hearing provides a comprehensive forum in which to address all of Caden's current needs and concerns, and mother will have an opportunity to present evidence and argument that her parental rights should not be terminated due to her beneficial relationship with Caden. (See § 366.26, subd. (c)(1)(B)(i).) And, while reunification itself is not a focus of the

permanency planning hearing, mother may file a petition pursuant to section 388 to be heard at any time before the scheduled permanency planning hearing, alleging any change of circumstances justifying further reunification efforts, just as she would have been able to establish at a section 366.3 hearing. The availability of this procedure preserves mother's due process rights. (*Marilyn H., supra*, 5 Cal.4th at p. 309.)

We offer the following final observations in order to focus any further juvenile court proceedings upon Caden's need for stability and permanency. First, we direct the attention of the parties and the juvenile court to section 352. Pursuant to that provision, the court may continue any hearing in a dependency proceeding "beyond the time limit within which the hearing is otherwise required to be held, provided that a continuance *shall not be granted that is contrary to the interest of the minor*. In considering the minor's interests, the court shall give *substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements*." (§ 352, subd. (a)(1), italics added.) Moreover, "[c]ontinuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance. Neither a stipulation between counsel nor the convenience of the parties is in and of itself a good cause. . . . Whenever any continuance is granted, the facts proven which require the continuance shall be entered upon the minutes of the court." (*Id.*, subd. (a)(2).) We trust that these requirements will not be disregarded moving forward.

Second, we were informed at oral argument by counsel that Caden's prospective adoptive placement has failed despite efforts to stabilize it and he was moved to another foster home on November 11, 2020. This new home is not an adoptive placement. We are saddened by this turn of events, which

10

might have been avoided had this matter not been so badly mishandled in the proceedings below, a point conceded by mother's appellate counsel.

According to the parties, there is a juvenile court hearing currently scheduled for December 28 that is intended for in limine motions in advance of the contested permanency planning hearing in January 2021. We are told that the Agency no longer recommends adoption as Caden's permanent plan, that a status report will be filed on December 18, and that the parties now propose that the December 28 hearing be converted to a section 366.3 hearing at which stipulated findings will be presented to the juvenile court to maintain Caden in long-term foster care with a goal of legal guardianship. According to counsel, *if* the juvenile court converts the December 28 hearing date to a section 366.3 hearing, and *if* the court adopts the stipulated findings, there would be no need for a contested permanency planning hearing in January 2021.

It remains to be seen whether the juvenile court will convert its hearing to a section 366.3 hearing later this month, but we disagree that stipulated findings should be the end of the matter. As discussed above, the statutory scheme expressly contemplates that a permanency planning hearing will be held for a minor placed in long-term foster care at least annually unless the juvenile court finds "by clear and convincing evidence that there is a compelling reason for determining that a hearing held pursuant to Section 366.26 is not in the best interest of the child because the child is being returned to the home of the parent, the child is not a proper subject for adoption, or no one is willing to accept legal guardianship." (§ 366.3, subd. (h)(1).) Here, no such finding has been made and it has been almost three years since Caden's last permanency planning hearing was held. That the minor's prospective adoptive placement has failed does not necessarily mean that he is not *adoptable*. We are aware that we lack knowledge of all

11

the current facts and circumstances in this complicated case, but that is why active and direct engagement by the juvenile court is all the more necessary to determine Caden's best interests.

"The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.) The parties' suggestion that the juvenile court should accept a stipulation as to Caden's adoptability at an uncontested hearing in December 2020 makes little sense when a contested permanency planning hearing has already been scheduled for January 2021 at which adoptability is the central issue. This seems especially true given that Caden's adoptability is intertwined with his ongoing relationship with his mother and the question whether that relationship is beneficial to the minor will be fully considered based on expert evaluation and testimony at the contested hearing.

The solution, in our view, is to trail the section 366.3 hearing to the date of the contested permanency planning hearing and to handle both matters together. If, after consideration of all of the evidence at that hearing, the juvenile court finds the minor generally adoptable, the court must terminate parental rights unless a beneficial relationship has been established.[6] On the other hand, if Caden is found not to be adoptable or a

---

[6] At oral argument mother's appellate attorney suggested that termination of parental rights at this juncture would make Caden a legal orphan and should therefore not be considered. That is untrue. If Caden is found to be adoptable and no beneficial relationship is established, parental rights *must* be terminated under the governing statute. (§ 366.26, subd. (c)(1)). If after three years, however, no adoptive placement is found for the minor, Caden may petition the juvenile court to reinstate parental rights pursuant to section 366.26, subdivision (i)(3), if appropriate. Given the record in this case, the juvenile court may wish to consider whether Caden

beneficial relationship is found, the court may then make any necessary findings pursuant to section 366.3 or otherwise and continue the matter for further review at the required six month intervals. Should the juvenile court instead convert the December 28 hearing into a section 366.3 review, it should make all necessary findings on the record, particularly if it finds that a compelling reason exists to forgo the currently calendared section 366.26 hearing because it is not in the child's best interests to hold that hearing. (§ 366.3, subds. (e), (h)(1)).

## III. DISPOSITION

The judgment is affirmed. The clerk of this court is instructed to serve a copy of this opinion on the juvenile court judge scheduled to preside over the December 28, 2020 hearing in this matter immediately upon filing. The parties to this appeal are ordered to file a joint letter with this court no later than January 5, 2021, with an update regarding the current procedural posture of the case. No further continuance or vacating of the January 2021 permanency planning hearing should be permitted in this matter other than in accordance with section 352 or section 366.3 and with an express finding on the record as to why such a course of action is in the best interests of the minor.

---

would be more likely to find an adoptive placement if parental rights are terminated.

_____
Sanchez, J.

WE CONCUR:


_____
Margulies, Acting P. J.


_____
Banke, J.