Filed 11/10/22  In re Z.R. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Z.R. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>P.R.,<br><br>Defendant and Appellant. | F084371<br><br>(Super. Ct. Nos. JVDP-20-000105, JVDP-20-000106)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Peña, J. and Smith, J.

Appellant Patricia R. (mother) appealed from the juvenile court's May 12, 2022, orders issued at a Welfare and Institutions Code section 366.26 hearing,[1] placing her then 14-year-old son, Z.R., in long-term foster care and her 12-year-old daughter, G.R., in a legal guardianship. After reviewing the juvenile court record, mother's court-appointed counsel informed this court he could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 (*Phoenix H.*).)

Mother filed a letter but failed to set forth a good cause showing that any arguable issue of reversible error arose from the section 366.26 hearing. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

## PROCEDURAL AND FACTUAL SUMMARY

On April 24, 2020, the children's aunt picked them up from mother's home after their then 16-year-old sister, Layla, stated they were not safe. Layla reported mother restrained then 12-year-old Z.R. so forcefully that he had difficulty breathing. Z.R. called for Layla to help him. Mother kept saying to him, " 'You have a devil in you. Say your name.' " Z.R. was able to get away from mother by biting her four times. Z.R. told his aunt mother hit him a couple of weeks before. Mother allowed the children to stay with their aunt in Stockton.

The children returned to Modesto to the maternal grandparents' home on April 27, 2020. After the aunt contacted the Modesto Police Department with her concerns for the children, an officer investigated. Layla reported mother started thinking people were following them the week before. She took away their cellphones and school laptops. One night mother decided that there was a demon inside of Z.R. During the night, she

---

[1]     Statutory references are to the Welfare and Institutions Code.

turned on the television in Layla's room and turned up the volume. Mother was sleeping in the living room with Z.R. During the night, Layla could hear Z.R. screaming that he needed to go to the bathroom and was hungry. Z.R. confirmed that mother held him tightly for five to six hours and asked him what his name was. He believed she did that thinking he was possessed. Mother said she was holding him for religious reasons and refused to expound on the incident. G.R. said mother talked about " 'Zoey' " who was a demon inside of Layla.

The police did not have enough evidence to make an arrest or remove the children but made an emergency child welfare referral after Layla refused to return home and had to be involuntarily detained in a psychiatric facility. (§ 5150.)

Mother told an emergency response social worker that she had been given multiple diagnoses over the years but her doctor believed posttraumatic stress disorder (PTSD) was the most likely diagnosis. The maternal grandmother said mother had a long history of mental illness. She believed mother was in a state of psychosis, which she had witnessed before. The grandmother said she filed for guardianship of the children because she was fearful that mother was going to harm them. Mother was offered the option of having the children placed with the maternal grandmother but refused.

On May 8, 2020, a social worker from the Stanislaus County Community Services Agency (agency) took the children into protective custody and filed a dependency petition on their behalf, alleging under section 300, subdivision (b) mother was unable to provide them regular care and protect them because of her mental illness and that the whereabouts of their father, James R., were unknown. The petition further alleged that Layla was suffering or was at risk of suffering serious emotional damage because of mother's conduct. (§ 300, subd. (c).)

Mother appeared at the detention hearing on May 13, 2020, and was appointed counsel. The court continued the matter to the following day so the agency could attempt

to contact James. The parents appeared the following day and James was appointed counsel. Mother's attorney waived a formal reading of the petition and advisement of rights and entered a denial. She also advised the court that mother read the petition and they discussed it and submitted the matter. Her attorney added that mother was concerned the language used in the petition was more negative than was necessary. For example, mother wanted the court to know that the Modesto police were conducting a welfare check as opposed to a child abuse investigation as it was described in the petition. Mother also disagreed with the information in the petition but understood the information. Her attorney asked the court to grant the agency discretion to release the children to her custody. County counsel and minors' counsel objected. County counsel informed the court the children were with their maternal aunt and doing well.

The juvenile court found prima facie evidence the children were described by section 300 and ordered them detained.

On August 26, 2020, mother's attorney submitted a three-page offer of proof from mother that was admitted and attached to the minute order. Counsel submitted the matter of jurisdiction and the juvenile court sustained the petition and set the dispositional hearing for a date in September 2020.

On September 16, 2020, the juvenile court ordered the children removed from parental custody, and ordered reunification services for the parents and ordered mother to complete a psychological evaluation.

Mother completed a psychological evaluation in December 2020 with Dr. Cheryl Carmichael. Dr. Carmichael opined that mother has intellectual strengths in that she is capable of understanding information, learning new information and meeting intellectual and task standards. However, she had "experienced multiple episodes of deterioration, likely to the level of psychosis." In addition, she could not "tolerate the discomfort associated with how her impaired behavior negatively impacts others" and relied heavily

4

on her diagnosis of PTSD to justify her behavior. Dr. Carmichael did not believe mother could "rectify her behavioral and psychological style within a reasonable period of time to successfully reunify" with the children.

By the six-month review hearing in February 2021, mother was on medication and engaged in individual counseling. None of the children wanted to have contact with her. They were receiving counseling to deal with their emotions and appeared to be doing well but did not want to visit or have contact with mother. The agency believed family counseling would benefit mother and the children when their clinicians deemed it appropriate. It recommended mother participate in a second psychological evaluation to determine if she could benefit from services.

The juvenile court found mother made fair progress at the six-month review hearing on February 24, 2021, continued reunification services to the 12-month review hearing and ordered mother to complete a second psychological evaluation.

In the intervening months, mother participated in individual counseling and completed a second psychological evaluation with Dr. Edward Moles. She saw a psychiatrist once a month who said mother did not have schizophrenia. Rather, she was being treated for PTSD with a low dose of an antidepressant. The children did not want to visit mother and 17-year-old Layla did not want to reunify with her. The agency opined it would be detrimental to return the children to mother's custody and recommended the juvenile court terminate mother's reunification services but continue services for father and grant the agency discretion to begin overnight visits with him and the children.

Dr. Moles issued his report of mother's psychological evaluation on June 23, 2021. Under significant earlier behaviors, Dr. Moles reported that on October 1, 2012, mother went to the Social Security office with G.R. and Z.R. to apply for Social Security income. She gave the worker a note stating that she wanted to drown her children. She

5

explained the demon told her to drown them. She said she was diagnosed with bipolar disorder and prescribed medication. She was involuntarily detained and placed in a psychiatric facility. (§ 5150.) The following December, mother went to the Children Crisis Center and said she was not feeling well and had been diagnosed with schizophrenia. She stated, " 'My demons are scaring me.' " She said she was concerned that something might happen to the children. Two other reports in 2012 indicated that mother had bipolar disorder and schizophrenia.

Dr. Moles diagnosed mother with PTSD and schizophrenia, paranoid type. Her mental illness was chronic, additional reunification efforts would not enable her to adequately care for her children and there were not additional services he would recommend. He reported she had visual and auditory hallucinations and delusions of demons, apprehension of demons being a threat to her children, a belief that her daughter had a demon called " 'Zoey' " and paranoid beliefs that her neighbors were recording her and the children's computers and cellphones were being used to listen to her.

In July 2021, mother filed a section 388 petition, asking the juvenile court to return the children to her custody and dismiss the dependency action.

On August 30, 2021, the juvenile court conducted an evidentiary hearing on mother's section 388 petition and a contested 12-month review hearing. The court denied mother's section 388 petition, terminated her reunification services and continued services for James to the 18-month review hearing on October 13, 2021.

By October 2021, James completed his case plan. The agency recommended the juvenile court continue services for him. On October 13, 2021, the court continued the 18-month review to January 5, 2022.

In December 2021, the agency filed a report for the 18-month review hearing, recommending the juvenile court terminate James's reunification services and set a section 366.26 hearing to establish a permanent plan of legal guardianship for the

children with her current caregivers. James completed his court-ordered services and demonstrated safe parenting. However, G.R. and Z.R. did not want to begin a trial visit with him or reunify with him and he had not taken any initiative beyond weekend visits to enable the agency to ensure he was meeting the children's needs.

The 18-month review hearing was continued and conducted on January 12, 2022. The juvenile court terminated James's reunification services and set a section 366.26 hearing for May 12, 2022.

In its report for the section 366.26 hearing, the agency recommended a permanent plan of legal guardianship for G.R. and long-term foster care for Z.R.

Mother appeared at the section 366.26 hearing with her attorney who asked the juvenile court to consider dismissing the matter and returning the children to mother's custody. James did not personally appear. His attorney submitted the matter and told the court James agreed to the guardianship.

The juvenile court denied mother's request and acknowledged her disagreement, stating "I understand you disagree, that you don't believe that this entire record or these proceedings have been true, and I respect your truth. However, my ruling is in opposition to that, and I will be following the [a]gency's recommendation based on all of the evidence before me." The court ordered Z.R. into a permanent plan of foster care with a concurrent plan of placement with a fit and willing relative and set a postpermanency plan review hearing for November 3, 2022. The court ordered G.R. into a legal guardianship and dismissed its dependency jurisdiction.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the

7

appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

By the time a dependency case reaches a section 366.26 hearing, there are few options available to the juvenile court. Indeed, " 'the sole purpose of the section 366.26 hearing is to select and implement one of the listed permanent plans.' " (*In re Christopher M.* (2003) 113 Cal.App.4th 155, 160.) The legislative preference is "for adoption over legal guardianship over long-term foster care." (*San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 885.)

Mother does not argue the juvenile court erred in ordering permanent plans of legal guardianship and long-term foster care for G.R. and Z.R. Rather, she seeks to raise issues from the detention hearing. She claims her attorney submitted on detention against her wishes, did not defend her when the juvenile court ruled on the petition without allowing her to speak, altered her statement demanding her rights to religious freedom, and failed to submit supporting documents that contradicted the agency's reports against her. She filed two motions asking this court to take judicial notice of 10 exhibits, which we denied.

We conclude mother forfeited any issue regarding the children's detention by failing to timely raise it on appeal. The juvenile court's ruling on detention was issued on May 14, 2020. In order to challenge the manner in which the agency initially removed her children, mother was required to raise it on appeal from the juvenile court's dispositional order. However, she did not. Consequently, it is not reviewable. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 [dispositional orders are the first appealable judgment; unappealed dispositional orders are final and binding].)

Finally, by failing to raise any issues from the juvenile court's findings at the termination hearing, mother has not shown good cause that an arguable issue of reversible error arose from the court's order terminating her parental rights. Further,

8

though we are not required to do so, we have reviewed the record as it relates to the termination hearing and have found no arguable issues for briefing.  (*Phoenix H.*, *supra*, 47 Cal.4th at pp. 841–842.)  Consequently, we dismiss the appeal.

## DISPOSITION

This appeal is dismissed.